2008 VT 14

# 985 Associates, Ltd., Kristen Uroskie-Lewis, and Travelers Indemnity Company v. Daewoo Electronics America, Inc. f/k/a Daewoo Electronics Corp. of America

[945 A.2d 381]

No. 06-339

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed February 8, 2008

*Thomas C. Nuovo* of *Bauer, Gravel, Farnham, Nuovo, Parker & Lang,* Burlington, for Plaintiffs-Appellants.

*Walter E. Judge, Jr.* of *Downs Rachlin Martin PLLC,* Burlington, for Defendant-Appellee.

¶ 1. **Johnson, J.** This products liability action arose out of a kitchen fire in the apartment of plaintiff Kristen Uroskie-Lewis. Plaintiffs alleged that a defective microwave, manufactured by defendant, was the cause of the fire and sought to introduce testimony of two fire investigation experts on the issue of causation. The trial court granted defendant's pretrial motion to exclude the expert testimony, finding that it was unreliable and therefore inadmissible under Vermont Rule of Evidence 702, and subsequently granted summary judgment to defendant. Plaintiffs appeal, claiming that the trial court abused its discretion in ruling that the opinions of its experts did not meet the minimum requirements of Rule 702. We agree that the trial court abused its discretion, given the standards articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and adopted by this Court, and reverse.

¶ 2. On December 13, 2000, a fire broke out in the kitchen of plaintiff Uroskie-Lewis's apartment. No one was in the building at the time the fire ignited, and there were no resulting injuries. The Burlington Fire Department (BFD) responded to the scene, investigated the origin of the fire, and issued a report. The parties agree that the fire originated in the rear left corner of the kitchen in the area of an electrical outlet, and plaintiff Uroskie-Lewis testified that the microwave was the only appliance plugged into that outlet. Based on its investigation, the BFD reported the logical cause of the fire to be an "arc in [the] steel receptacle box/or defect in [the] microwave."

¶ 3. Plaintiff 985 Associates, Ltd., the owner of the building, initiated this action in August 2003, seeking to recover damages from defendant. Plaintiff Uroskie-Lewis and her insurer, plaintiff Travelers Indemnity Company, intervened in the suit seeking damages from the fire as well. During the course of litigation, plaintiffs produced the reports of their two experts, Timothy Austin of New England Fire Cause & Origin, Inc. and Nathaniel Johnson of Winnipesaukee Associates, who concluded that the microwave was the cause of the fire. Defendant filed a motion to compel plaintiffs to answer certain interrogatories more fully, and therein challenged plaintiffs' experts' opinions on the grounds that neither identified a specific defect in the microwave. The trial court, Judge Katz presiding, denied the motion, stating that, based on the expert evidence, an "inference of defect may be drawn." Defendant then moved for summary judgment on the same grounds. Plaintiffs responded with a cross-motion for summary judgment. The court denied both motions, finding that the existence of a defect in the microwave was an issue of material fact and that neither party was entitled to judgment as a matter of law.

¶ 4. In January 2005, defendant filed a *Daubert* motion seeking to exclude plaintiffs' experts. The court, Judge Norton presiding, denied the motion after hearing in April 2005. Discovery concluded in early December 2005, and jury draw was set for the following month. At the pretrial conference before Judge Joseph in December, defendant apprised the court of its intention to file a motion in limine to exclude plaintiffs' experts under *Daubert*. The parties were ordered to file memoranda on the admissibility of the expert opinions, and on January 9, 2006, the court granted defendant's motion to exclude the experts. Plaintiffs filed a motion to recon-

sider, which was denied by the court on May 1, 2006. As plaintiffs no longer had experts to testify on causation, defendant moved for summary judgment. On July 10, 2006, the court granted defendant's motion for summary judgment because "the plaintiffs have no expert testimony to support their claims." This appeal followed.

¶ 5. Plaintiffs' principal challenge on appeal is that the trial court's exclusion of their expert witnesses is contrary to the standards for admission of expert testimony articulated by the United States Supreme Court in *Daubert* and adopted by this Court in *State v. Brooks*, 162 Vt. 26, 643 A.2d 226 (1993). Plaintiffs further contend that the trial court abused its discretion in controlling the discovery process. Specifically, plaintiffs claim that the court should have granted their motion for summary judgment because defendant did not timely respond to their requests to admit that a defect in the microwave caused the fire. Alternatively, they argue that the court should have granted plaintiffs' motion to compel defendant to disclose its experts in a more timely manner.

¶ 6. We begin by considering the admissibility of plaintiffs' expert testimony under Vermont Rule of Evidence 702. Under Rule 702, a qualified expert is allowed to testify if his or her testimony "assist[s] the trier of fact to understand the evidence or to determine a fact in issue," and if:

> (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Brooks*, we noted that our rules of evidence are "essentially identical" to the federal rules and held that we should therefore apply the federal principles governing admissibility of expert testimony. 162 Vt. at 30, 643 A.2d at 229. Prior to our holding in *Brooks*, the United States Supreme Court decided, in *Daubert*, 509 U.S. at 586, 592-93, that Federal Rule of Evidence 702 superseded the traditional test for admission of expert testimony established by *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923). Under the *Frye* test, novel scientific evidence in the form of expert opinion was admissible only if "the scientific principles supporting the evidence had gained general acceptance in the relevant scientific community." *USGen New England, Inc. v. Town of Rockingham*, 2004 VT 90, ¶ 15, 177 Vt. 193, 862 A.2d 269. The *Daubert* Court held that Rule 702 replaced the *Frye* test, creating

instead a flexible standard requiring only that expert testimony be both relevant and reliable to be admissible. *Daubert*, 509 U.S. at 588-89. Following *Daubert* and our adoption of its analysis, trial judges in Vermont "must now act as gatekeepers who screen expert testimony ensuring that it is reliable and helpful to the issue at hand before the jury hears it." *USGen*, 2004 VT 90, ¶ 19.

¶ 7. In two later decisions, *General Electric Co. v. Joiner*, 522 U.S. 136 (1997), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court attempted to further clarify the Rule 702 admissibility standards first articulated in *Daubert*. In *Joiner*, the Court held that despite the liberal standard for admissibility under *Daubert*, like other evidentiary rulings, a trial court's decision to admit or exclude expert testimony is reviewable only for abuse of discretion. 522 U.S. at 143. Shortly thereafter, the Court in *Kumho* rejected the Eleventh Circuit's refusal to apply the *Daubert* analysis to an expert whose opinion was based on technical rather than scientific knowledge. 526 U.S. at 151. The Court held that the language of Rule 702 does not distinguish between scientific, technical, or other specialized knowledge and that the trial court must therefore ensure that all expert testimony is both relevant and reliable before it is presented to the trier of fact. *Id.* at 147-48.

¶ 8. The *Daubert* trilogy created a flexible standard intended to keep misleading "junk science" propagated primarily for litigation purposes out of the courtroom while simultaneously opening the door to well-reasoned but novel scientific or technical evidence. See J. Hein, *When Reliable is Reliable Enough: The Use of Expert Testimony After Kumho Tire v. Carmichael*, 6 Wash. U. J.L. & Pol'y 223, 223 (2001). Nonetheless, trial courts have struggled with applying the *Daubert* admissibility analysis, particularly its reliability prong. See C. Welch, *Flexible Standards, Deferential Review: Daubert's Legacy of Confusion*, 29 Harv. J.L. & Pub. Pol'y 1085, 1094 (2006). On the one hand, the *Daubert* Court suggests specific factors — one of which is "general acceptance" — for the trial court to consider in determining reliability. 509 U.S. at 593-94. On the other hand, however, the Court has given trial courts broad discretion to determine, on a case-by-case basis, whether some or any of the factors are relevant to evaluating the reliability of expert evidence before the court. See *Kumho*, 526 U.S. at 150. This lack of a determinative standard, and the adoption of a deferential standard of review, has

led to inconsistent decisions in the types of expert evidence that courts deem admissible under Rule 702. While some courts have interpreted *Daubert* as requiring a more exacting inquiry into expert testimony than under the *Frye* "general acceptance" test, other courts have been criticized for taking the opposite approach, admitting practically any expert testimony save the completely absurd. See C. Welch, *supra*, at 1095-96; V. Schwartz & C. Silverman, *The Draining of Daubert and the Recidivism of Junk Science in Federal and State Courts*, 35 Hofstra L. Rev. 217, 218 (2006).

¶ 9. Like the Court in *Joiner*, we review trial court decisions on the admissibility of expert testimony only for abuse of discretion. *USGen*, 2004 VT 90, ¶¶ 21-23. The trial courts must have flexibility in carrying out their gatekeeper functions, but we cannot allow our deferential standard of review to blind us to fundamental misapplications of the *Daubert* analysis. See *id.* ¶ 24 (stating that abuse-of-discretion standard of review "does not mean, however, that we will not engage in a substantial and thorough analysis of the trial court's decision and order to ensure that the trial judge's decision was in accordance with *Daubert* and our applicable precedents" (quotation omitted)). We adopted the *Daubert* decision precisely because it comported with the "liberal thrust" of the rules of evidence and broadened the types of expert opinion evidence that could be considered by the jury at trial. 509 U.S. at 588; see also V.R.E. 702.

■ ■ ¶ 10. Given the "general approach [of the rules of evidence] of relaxing the traditional barriers to 'opinion' testimony," *Brooks*, 162 Vt. at 30, 643 A.2d at 229 (citation omitted), the trial court's inquiry into expert testimony should primarily focus on excluding "junk science" — because of its potential to confuse or mislead the trier of fact — rather than serving as a preliminary inquiry into the merits of the case. See *Iacobelli Constr., Inc. v. County of Monroe*, 32 F.3d 19, 25 (2d Cir. 1994); M. Treadwell, *Evidence*, 57 Mercer L. Rev. 1083, 1097 (2006). The opinions proffered by plaintiffs' experts here plainly do not present the type of "junk science" problem that *Daubert* was intended to thwart. On the contrary, both experts' fire origin conclusions were supported by " 'good grounds' based on what is known" — e.g., investigation of the fire scene, examination of the microwave, and interviews with the fire marshal who responded to the scene. *Daubert*, 509 U.S. at 590. Furthermore, each expert

detailed how his analysis of those facts, largely by process of elimination, led to the conclusion that a defect in the microwave was the likely cause of the fire at issue. This is precisely the type of evidence that would readily have been admitted prior to *Daubert* and, a fortiori, it should not now be excluded under *Daubert*'s more liberal approach. See, e.g., *State v. Brown*, 122 Vt. 59, 60, 163 A.2d 845, 846 (1960) (pre-*Daubert* case in which trial court allowed both parties to present testimony of fire origin experts).

¶ 11. In light of the standard for admissibility of expert testimony under *Daubert* and the qualifications and methodology employed by plaintiffs' experts, the trial court acted unreasonably in excluding plaintiffs' causation experts. In the case at hand, plaintiffs' experts were prepared to testify as to the cause of the fire — the only issue of fact in the case — and their opinions were therefore undeniably relevant. See V.R.E. 702 (expert testimony must assist trier of fact "to determine a fact in issue"). Rather than conducting a threshold inquiry into the factual basis and methodology underlying the experts' opinions to determine their reliability, however, the court appears to have used the reliability prong of the *Daubert* analysis to make a substantive determination on the merits of plaintiffs' case. 509 U.S. at 595 (court's inquiry into expert testimony should be addressed to its relevance and reliability, not the merits of the expert's conclusion).

¶ 12. The trial court's reasoning was flawed with regard to its determination that plaintiffs' expert opinions were unreliable and therefore inadmissible under Rule 702. Austin is a certified fire investigator who has worked as a fire analyst for over ten years. In conducting his investigation of the fire at issue, he relied on his own examination of the scene, a two-hour interview with the fire marshal who authored the BFD report, and an interview with plaintiff Uroskie-Lewis. Based on the fire scene analysis, including analysis of the fire and burn patterns within the area of origin and examination of the electrical outlet adjacent to the microwave, Austin concluded that there was "no indication that the building wiring was related to the ignition source for this fire," and that the fire resulted from a "failure within the microwave oven." In discrediting Austin's methodology, the court relied primarily on two facts: (1) that he did not consult the BFD report, and (2) that he failed to examine the microwave oven. Neither of

these facts, however, is fatal to the expert's testimony. Austin both interviewed the author of the BFD report directly and examined the burn patterns on the microwave oven, determining that they appeared to originate from inside the device and were not consistent with a fire starting at the outlet. His failure to read the report or examine the internal workings of the microwave is an issue subject to cross-examination, but does not render his opinion inadmissible under Rule 702.

¶ 13. Furthermore, defendant's argument that plaintiffs' experts should be excluded because they were unable to identify a specific defect in the microwave is without merit. The central issue here is the admissibility of the proffered expert testimony, not the sufficiency of the evidence in proving plaintiffs' case. Again, the fact that Austin was able to arrive at the microwave as the source of the fire only by way of elimination of other sources does not render his methodology unreliable. Experts in products liability cases are rarely able to establish causation to a certainty; such cases tend to be more of an exercise in excluding other causes and determining the likely cause based on circumstantial evidence. See *Travelers Ins. Cos. v. Demarle, Inc., U.S.A.*, 2005 VT 53, ¶ 10, 178 Vt. 570, 878 A.2d 267 (mem.) (causation in products liability action can be proven by circumstantial evidence). In any event, scientific evidence "does not alone have to meet the proponent's burden of proof on a particular issue" to be admissible. *USGen*, 2004 VT 90, ¶ 19. Rather, the proponent of expert testimony need only establish its reliability to present it to the trier of fact for an ultimate determination on the merits. See J. Hein, *supra*, at 230-31.

¶ 14. Similarly, the purported deficiencies in Johnson's methodology cannot reasonably form the basis for exclusion of his opinion under the *Daubert* principles. Johnson is an electrical engineer with many years of experience in fire investigation. He was retained by Austin to conduct a separate investigation into the cause of the fire. At deposition, Johnson testified that Austin provided him with a summary of his own investigation and findings, but there is nothing in the record to suggest, as the court concluded, that Johnson's independent investigation was unduly influenced by "preconceived notions." To the extent that Johnson did rely on Austin's expert conclusions, he was within his right to do so under the rules of evidence. See V.R.E. 703 (experts

may rely on another expert's opinion if it is "of a type reasonably relied upon by experts in the particular field"). Likewise, the fact that Johnson did not himself visit the fire scene in conducting his investigation did not render insufficient the factual underpinnings of his opinion. Both Austin and the fire marshal had already examined the scene, identifying only two possible sources of ignition: the outlet or the microwave oven. Johnson was justified in relying on that information, in addition to his own examination of detailed fire-scene photographs and the device in question to reach his conclusions.

¶ 15. Nor is Johnson's lack of expertise in the workings of microwave ovens grounds for exclusion of his testimony. Johnson has both the qualifications to provide fire causation testimony and a sufficient factual basis for his conclusions regarding the source of the fire. After conducting his investigation, he found the physical evidence consistent with a point of origin in the microwave because "[a] fire inside the unit at the control panel would allow the face of the unit to fall outside the microwave," while "an attacking fire would consume the face plastic and allow the weight of the components on the PCB to pull the assembly back into the compartment where they would remain after the fire." Thus, despite the court's determination to the contrary, Johnson gave a detailed reason for his conclusion that the microwave was defective and would be subject to cross-examination with respect to any concerns about his failure to personally inspect the scene. He was not, however, required to have expertise in the particular device or to pinpoint the specific defect in the device to testify as to fire causation generally. Again, the trial court's Rule 702 analysis appears to focus on the conclusions drawn by the experts, rather than on the reliability of the underlying facts and methodology employed in reaching those conclusions. See *Daubert*, 509 U.S. at 595.

¶ 16. As we have noted, "there are no certainties in science." *State v. Streich*, 163 Vt. 331, 343, 658 A.2d 38, 47 (1995). So long as scientific or technical evidence has a sound factual and methodological basis and is relevant to the issues at hand, it is within the purview of the trier of fact to assess its credibility and determine the weight to be assigned to it. See *Brooks*, 162 Vt. at 31, 643 A.2d at 229. The trial court should have allowed the adversarial process to draw out any deficiencies in the expert

testimony, rather than usurping the jury's function by excluding expert testimony that met the standards articulated in *Daubert* and adopted by this Court. See *Daubert*, 509 U.S. at 596 (expert testimony can be attacked by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof").

¶ 17. As a final matter, we briefly address plaintiffs' claims of error regarding the pretrial discovery process. Plaintiffs first request that we reverse the trial court's decision allowing defendant to withdraw its admissions. In their requests for admission, plaintiffs essentially asked defendant to concede that a defect in the microwave was the cause of the fire. As this was the sole issue in the case, plaintiffs were not prejudiced by defendant's untimely response and the court's later grant of defendant's motion to withdraw its admissions-by-failure-to-respond. See V.R.C.P. 36(b) (court may permit withdrawal or amendment when "the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action . . . on the merits"). The court did not abuse its discretion in allowing defendant to withdraw its admissions. Plaintiffs' next contention deals with the timeliness of defendant's disclosure of its experts. As the case is being remanded for further proceedings and defendant has long since disclosed its experts, the issue is moot, and we decline to address it on appeal.

*Reversed and remanded.*