*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-089

MARCH TERM, 2012

| | |
|---|---|
| State of Vermont | } APPEALED FROM: |
| | } |
| | } Superior Court, Chittenden Unit, |
| v. | } Criminal Division |
| | } |
| | } |
| Mark P. Abair | } DOCKET NO. 2458-7-10 Cncr |

Trial Judge: Michael S. Kupersmith

In the above-entitled cause, the Clerk will enter:

Defendant appeals his conviction for driving under the influence (DUI), arguing that the trial court erred by allowing the State to elicit testimony from a state chemist regarding the effects of alcohol on the human body. We affirm.

On the evening of June 13, 2010, a Town of Milton police officer stopped defendant after observing his vehicle cross the center line and noticing that his license plate lights were not working. Defendant pulled over in a place that required the officer to stop his cruiser within an intersection. Upon approaching the vehicle, the officer noticed an odor of intoxicants as well as defendant's bloodshot eyes and slurred speech. Upon inquiry, defendant reported to the officer that he had had a couple of drinks. Defendant submitted to a preliminary breath test, which indicated the presence of alcohol, but he declined to submit to roadside sobriety tests. The officer then placed defendant under arrest and transported him to the town police station for DUI processing. At the police station, defendant submitted to a DataMaster test, which indicated a breath alcohol content (BAC) of .090. A second DataMaster test indicated a BAC of .089.

Defendant was arraigned on one count of DUI, and a jury trial was held on October 15, 2010. The State presented two witnesses. The first was the arresting officer, who testified as to the facts described above. The second was a state chemist, who testified on (1) the reliability of the DataMaster machine; (2) her relation-back analysis; and (3) the physiological effects of alcohol on the human body at certain BAC levels.

When the state chemist was queried on direct examination about the typical symptoms of an individual who produced a BAC of .09, defendant objected, citing a lack of foundation for the testimony. After the State elicited more testimony from the witness to establish a foundation for her opinion and the court gave defense counsel an opportunity to voir dire the witness, defendant renewed his objection on grounds that it was irrelevant because the witness had not observed defendant and that the witness lacked the qualifications to address the subject. The court overruled the objections on both counts.

The State continued its direct examination of the chemist on the effects of alcohol on the human body at different BAC levels. When the chemist testified that some studies showed noticeable effects on people even with a BAC as low as .02, defendant objected again. This time he argued that the testimony failed to meet the Daubert standard (for admitting expert testimony) because her having taken a physiology course did not qualify her to testify about the likely effects of a given BAC level, which invaded the purview of the jury. After stating that this was not a Daubert issue, the court allowed defense counsel another opportunity to voir dire the witness, this time out of the presence of the jury. Defense counsel then questioned the state chemist about a 1998 compilation of studies that she had relied upon in stating her opinions about the effects of alcohol on the human body at different BAC levels.

When the chemist stated during voir dire that the scientific community generally agreed that everyone is impaired to drive in some respect with a BAC of .08, defense counsel moved to strike the opinion because the chemist was referring to a general study rather than the specific case at issue. The court then directly questioned the chemist to determine if there was an adequate foundation for her opinion. At one point, the court stated that it was legitimate for the chemist to discuss studies showing impairment at a BAC of .08, but that she should avoid stating that it was generally accepted that everyone is impaired at that BAC level. Defense counsel stated that her biggest objection was associating certain behaviors and indicators of impairment with certain test numbers because "[i]t just doesn't meet the necessary standard to allow scientific information." In the end, the court overruled defendant's objection, but stated that it would like the State's expert to avoid the general statement that all people are impaired at a BAC of .08. When the jury returned, the chemist testified on direct examination about the effects on fine motor driving skills of someone with a BAC of .09 and even lower BAC levels, stating at one point that everybody is affected to some degree at a .08 level. On cross-examination, however, the chemist acknowledged, among other things, that some people in the studies relied upon by the State's expert showed no impairment at a BAC of .08 with respect to the specific tests they were given.

The defense presented two witnesses, defendant and a former state chemist who provided expert testimony. During his testimony, defendant's expert stated that he was familiar with the 1998 compilation upon which the State's expert relied, and he acknowledged that the science concerning the effects of alcohol on the human body had changed little in the previous twenty years.

Following the close of evidence, the jury returned a guilty verdict. Defendant filed a motion for a new trial, arguing that the testimony of the State's expert regarding the 1998 compilation should have been subjected to a Daubert analysis and excluded. In a December 2010 decision, the trial court denied the motion, ruling that scrutiny under Daubert is required only "with respect to novel scientific evidence, not long standing, generally accepted principles." The court stated that the effect of alcohol on the human body had been well recognized in the scientific community for a long time, and that defendant's objections to the testimony of the State's expert went to the weight of her testimony, not its admissibility. The court noted that defense counsel vigorously cross-examined the State's expert witness, and that the challenged testimony "was of little importance in the broad scheme of things." Thus, the court concluded that even if the testimony was admitted in error, such error was harmless beyond a reasonable doubt.

On appeal, defendant argues that (1) the trial court abused its discretion by failing to apply the Daubert standard in admitting the testimony of the State's expert regarding the effects of alcohol on the human body; and (2) the error was not harmless beyond a reasonable doubt.

According to defendant, the trial court's refusal to engage in a <u>Daubert</u> analysis with respect to the challenged testimony amounted to an abdication of its role as a gatekeeper to control evidence proffered for admission at trial. Defendant argues further that even if we consider the court to have applied a <u>Daubert</u> analysis, its decision to allow the challenged testimony was erroneous because the testimony was vague, unsupported, and inconsistent.

We agree with the trial court that there is no basis under <u>Daubert</u> to exclude the challenged testimony, and thus the court did not abuse its discretion in overruling defendant's objection to the testimony. Under V.R.E. 702, a qualified expert may present testimony that assists the trier of fact to understand evidence or determine a fact in issue if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." In light of the United States Supreme Court's decision in <u>Daubert v. Merrill Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), which we adopted in <u>State v. Brooks</u>, 162 Vt. 26 (1993), the trial courts "act as gatekeepers who screen expert testimony ensuring that it is reliable and helpful to the issue at hand before the jury hears it." <u>USGen New England, Inc. v. Town of Rockingham</u>, 2004 VT 90, ¶ 19, 177 Vt. 193. <u>Daubert</u> and its progeny created a "flexible standard [of admissibility] intended to keep misleading 'junk science' propagated primarily for litigation purposes out of the courtroom while simultaneously opening the door to well-reasoned but novel scientific or technical evidence." <u>985 Assoc's, Ltd. v. Daewoo Elec. Am., Inc.</u>, 2008 VT 14, ¶ 8, 183 Vt. 208. "So long as scientific or technical evidence has a sound factual and methodological basis and is relevant to the issues at hand, it is within the purview of the trier of fact to assess its credibility and determine the weight assigned to it." <u>Id</u>. ¶ 16.

Thus, we have repeatedly stated that "<u>Daubert</u> presents an admissibility standard only." <u>State v. Burgess</u>, 2010 VT 64, ¶ 12, 188 Vt. 235 (quotation omitted). As the <u>Daubert</u> Court itself noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596. In the same vein, this Court has stated that "to tease out deficiencies of expert testimony, opponents should attack testimony of this nature through the adversarial process, rather than through excluding the evidence altogether." <u>Burgess</u>, 2010 VT 64, ¶ 12 (quotation omitted).

"[W]e review trial court decisions on the admissibility of expert testimony only for abuse of discretion." <u>985 Assoc's</u>, 2008 VT 14, ¶ 9. Here, the foundation for the testimony of the State's expert regarding the effect of various concentrations of alcohol on the human body was established through direct examination, voir dire by defense counsel, and the trial court's own questioning. Plainly, the State's expert was qualified to testify as to her understanding of studies on this subject. Defendant's own expert on the same subject and with a similar background acknowledged his awareness of the compilation relied upon by the State's expert and further stated that the science in this field had not changed significantly in twenty years. Defendant's problem was with the weight to be attributed to the testimony of the State's expert, not its admissibility. Indeed, defendant asserts in his brief that the testimony of the State's expert was inconsistent, a point that defense counsel tried to exploit through her vigorous cross-examination at trial. In short, the trial court did not err in refusing to exclude the testimony of the State's expert based on a <u>Daubert</u> challenge.

<u>Affirmed</u>.

3

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice