*Williams v. Eilers et al.*, No. 802-12-13 Wncv (Tomasi, J., Sept. 28, 2015).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Washington Unit | CIVIL DIVISION<br>Docket No. 802-12-13 Wncv |

Rebecca Ann Williams,
    Plaintiff

    v.

Craig A. Eilers,
Amy M. Buths Eilers,
Owen A. Wimble,
Owen A. Wimble,
Gordon A. Marcelle,
Gordon A. Marcelle,
    Defendants

### Opinion and Order on Defendants' Motion to Exclude Expert Testimony

Plaintiff has brought various claims against the Defendants alleging, *inter alia*, that they harvested timber on Plaintiff's property without lawful authority. Plaintiff designated Arborist Michael Fallis as an expert concerning damages. Defendants all moved to exclude his testimony and sought a "*Daubert* hearing" to challenge the bases for his expert opinion. The Court held a *Daubert* hearing on September 21, 2015. Based on that hearing, the Court makes the following determinations.

### The Standard for Admitting Expert Testimony

The Vermont Supreme Court has adopted the *Daubert* line of authority to determine the admissibility of expert testimony under Vt. R. Evid. 702. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). As applied in Vermont, the *Daubert* inquiry is intended to liberalize admissibility while ensuring that the testimony is helpful for the finder of fact and that the expert's methods are reliable.

The non-exclusive list of factors applicable to scientific testimony includes: "(1) whether the theory or technique involved is capable of being tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential error rate associated with the scientific technique; and (4) whether the theory or technique has been generally accepted in the scientific community." *State v. Pratt*, 2015 VT 89, ¶ 17 (citing *State v. Streich*, 163 Vt. 331, 343 (1995)).

Although *Daubert* addressed scientific testimony, the Court's gatekeeping function applies equally to nonscientific or other types of expert testimony. *Pratt*, 2015 VT 89, ¶¶ 18–19. In the case of nonscientific testimony, the court may apply the *Daubert* factors or any others specific to the area of expertise at issue, in a "flexible, nonmechanical" way. *Id.* at ¶ 25. This can include relying on the expert's qualifications and experience alone. Fed. R. Evid. 702, Advisory Committee Notes—2000 Amendment (noting that "experience alone—or experience in conjunction with other knowledge, skill, training or education—may . . . provide a sufficient foundation for expert testimony"). In all cases of proffered expert testimony, the Court's primary goal is to ensure that the evidence is "properly grounded, well-reasoned, and not speculative before it can be admitted." *Id.*; *see also* 29 Victor James Gold, *Federal Practice and Procedure: Evidence* § 6266 (noting that the "validity of an expert's explanatory theory depends [in part] . . . on consideration of logic and common sense").

Overall, the Vermont Supreme Court has "focused on the 'liberal thrust' of Rule 702, stating that 'the trial court's inquiry into expert testimony should primarily focus on excluding 'junk science'—because of its potential to confuse or

2

mislead the trier of fact—rather than serving as a preliminary inquiry into the merits of the case." *Pratt*, 2015 VT 89, ¶¶ 18–19 "So long as scientific or technical evidence has a sound factual and methodological basis and is relevant to the issues at hand, it is within the purview of the trier of fact to assess its credibility and determine the weight to be assigned to it." *Id*. at ¶ 30; *see 985 Associates, Ltd. v. Daewoo Electronics America, Inc.*, 2008 VT 14, ¶ 16, 183 Vt. 208, 217–18 (cautioning trial courts against misusing the reliability prong of the *Daubert* analysis to deny parties the opportunity of presenting their expert evidence to the trier of fact).

## The Fallis Opinion

At the outset of the *Daubert* hearing, the Defendants indicated that they were not challenging Fallis' credentials as an expert tree appraiser. Fallis has been a certified arborist since 1997, is a past or present board member of at least two arborist groups, is a certified tree risk assessor, engages in ongoing arborist trainings, and has offered opinions as to timber values in other cases. As a result, the Court accepts him as an expert in timber valuation in this case.

Fallis testified at the *Daubert* hearing and his written report concerning the subject property was also entered into evidence. Fallis testified that he had examined the Plaintiff's property and had developed an opinion as to the value of the trees allegedly cut down on her property by the Defendants. Fallis opined in his expert report and at the *Daubert* hearing that he estimated the value of the trees that were removed from Plaintiff's land to be $560,000.

Fallis explained that he had relied for his methodology on one of the methods contained in the Guide for Plaint Appraisal (the "Guide"), which he acknowledged was the principal authoritative treatise governing the appraisal of timber.

3

Specifically, he used the "Cost Approach," which included examination of the "Trunk Formula Method."

He stated that the Guide contained three main methodologies that may be employed to value timber. He explained that he did not use the "Market Approach" because that focuses primarily on the amount of value that the lost trees contributed to the land. In short, if one were selling the property how much less of a market value would it have as a result of the absence of the trees. Fallis indicated that the Market Approach made little sense here because Plaintiff is not selling the property and because, in his view, it would not put Plaintiff in the position she would have been in had the allegedly improper conduct not occurred.

He stated that the "Income Approach" to valuation also would not be appropriate in this context. That method is focused on income-producing property and the amount of lost income that could be attributed to the trees. Since Plaintiff's property is not income producing, Fallis testified that this method could not reasonably be employed.

Fallis testified that, in his opinion, the Cost Approach made the most sense in this case. Plaintiff claims that the trees were wrongfully taken and that estimating the cost to put Plaintiff back in the position she would have been in if the trees had not been taken would be appropriate in such circumstances. That conclusion was reinforced by his determination that the trees were important to Plaintiff, had provided privacy and screening to Plaintiff's home, and had played a valuable role as part of the natural landscape surrounding that home. Indeed, Plaintiff had paid a forester to thin and manage the grove of trees near her home only a few years

4

before the incident alleged in the Complaint, which Fallis said showed her ongoing interest in maintaining the trees.

Fallis testified as to how he had employed the Trunk Formula Method to arrive at the value of the trees. He stated that he had followed the steps outlined in the Guide to identify the cost of the largest commercially available trees of the same species as had been removed from Plaintiff's lot and to extrapolate from there to the size of the larger trees that had been taken. He stated that he had accounted for the condition of the trees and for the site, the contribution of the trees to the land and location ratings of the trees. Guide at 70–71.

Fallis testified that the Trunk Formula Method is often used by timber appraisers, is generally accepted, and that it is one of the methods authorized by the Guide. He testified that the method has been subject to peer review and can be tested for accuracy. He also testified that he had tested the results achieved through the Trunk Formula Method by employing a depreciated replacement cost formula. The results obtained were within six thousand dollars of his original estimate of $560,000.

On cross-examination, Defendants challenged Fallis concerning the fact that he had not used the Market Approach or even considered the overall market value of the property as a ceiling of reasonableness concerning his expert opinion. Fallis acknowledged that his appraisal did not take account of the market value of the property and that his valuation likely well exceeded the market value of the property. Defendants asserted that his failure to take into consideration the market value of the property violated the methodology set out in Chapter 8 of the Guide, which counsels that all appraisals must be "reasonable."

Fallis disagreed with the Defendants description of the demands of Chapter 8. In Fallis' opinion, Chapter 8 requires that appraisals be reasonable but does not establish the market value of the property as the sole lens of reasonableness. He pointed to a 2001 article from the Journal of Arboriculture, Exhibit A, which argued that market value should not be the only gauge of reasonableness for timber appraisals. He further testified that, in his opinion, market value is not the only way to judge reasonableness. Under the circumstances of this case, Fallis opined that the Cost Approach provided a reasonable methodology.

Analysis

As noted above, Defendants do not challenge Fallis' credentials as an expert arborist. Aside from his purported failure to follow Chapter 8 of the Guide, the Defendants also do not appear to challenge the methodology employed by Fallis. Nonetheless, leaving aside for the moment the reasonableness inquiry, the Court finds that his methodology meets the *Daubert* standard for admissibility.

The Guide notes that the Cost Approach is "widely used" and that the cost information "commonly applied for plant and landscape appraisal may include … [the] trunk formula method." Guide at 21. The Trunk Formula Method is outlined in detail in the Guide, which is an authoritative text; is commonly relied upon by arborists; can be tested; and is based on sound and easily understood principles. Guide, at 57–60, 70–71.

Against this, Defendants contend that Fallis' opinion is fatally flawed due to his failure to take account of the market value of Plaintiff's property in arriving at his valuation. They contend that Chapter 8 makes such an overlay a mandatory component of any valid appraisal. While the Court is sympathetic to the wisdom of

6

such an approach, for a number of reasons, it cannot conclude that the Guide is clear enough on that point to render Fallis' opinion wholly unreliable or methodologically flawed.

First, Fallis testified that Chapter 8 requires that appraisals be reasonable but offers only one test of reasonableness. He stated that, based on his expert experience and opinion, the Market Approach does not provide the only basis to judge reasonableness and that his appraisal was reasonable.[1] Exhibit A, though not supportive of his exact approach, reinforces that idea that professional arborists sometimes conclude that market factors are not the only components of reasonableness.

Second, the Guide seems to acknowledge unique situations where replacement value would be an appropriate appraisal method, despite the fact that such replacement trees would not likely increase the value of the property by the amount needed to find and install them. Guide, at 66–67.

Lastly, it appears that all of the methodologies in the Guide provide reasonable approaches to valuing timber. The Guide acknowledges that some approaches are more reasonable than others in certain situations. A useful example for this case is found in Chapter 7. There, the Guide posits an appraiser who conducts an appraisal using both the Cost Approach and the Market Approach. The former yielded a valuation of $4,000 per tree and the latter a valuation of $2,000 per

---

[1] The Defendants attempted to establish that Fallis had previously testified at his deposition that he had not followed Chapter 8 of the Guide. While the testimony was inconsistent at times, the Court believes his testimony at the *Daubert* hearing was ultimately clear: Fallis did not follow the test of reasonableness set out in Chapter 8 but he did comply with Chapter 8's requirement that appraisals be reasonable.

tree. The Guide notes that the Market Approach can be a useful check against the values derived from the Cost Approach. In this particular scenario, the Guide concludes that the Market Approach provides the "more reasonable estimate of value" for the trees. Guide at 97. The Guide concludes that appraisers "may consider and use both the Market and Cost Approaches for most appraisals…. When the two approaches provide different values, the appraiser should consider the information, consider the situation, and select the more reasonable appraisal." Guide at 97–98.

The above excerpt indicates that: (1) an appraiser "may" use both the Cost and the Market Approaches, but is not required to do so; (2) employing both methods is a very useful check on the value arrived at in the Cost Approach; (3) both methods provide "reasonable" valuations; and (4) depending upon the "information" and "the situation," as determined by the appraiser, the Market Approach may provide a "more reasonable" appraisal figure. The Court is also mindful of the Guide's instruction that the "judgment of the appraiser, based on careful analysis of all the factors, is the key to accurate plant appraisal. As such the appraiser should remember that this document is only a guide to that end." Guide, Preface.

Given those considerations, the Court cannot say that Fallis' opinion failed to follow the Guide or is wholly unreliable because it did not consider the Market Approach. No doubt, Fallis' failure to compare the Market Approach to the Cost Approach cannot be seen as a recommended practice, and it will likely provide ample fodder for cross-examination. Indeed, judging from the example from the Guide outlined above, the Market Approach may well provide a "more reasonable"

8

estimate of value in this case. But, Fallis has opined as to why, in this "situation," the Cost Approach is reasonable, and the Court will not employ *Daubert* to deprive trier of fact of the chance to consider such testimony. *See 985 Associates, Ltd.*, 2008 VT 14, ¶16, 183 Vt. at 217–18,   In the end, it will be up to the trier to determine whether Fallis' estimate of value should be adopted in this case.

<u>Conclusion</u>

In light of the foregoing, the Defendants' motions to exclude the testimony of Fallis are denied.

Electronically signed on September 28, 2015 at 02:12 PM pursuant to V.R.E.F. 7(d).

_____
Timothy B. Tomasi
Superior Court Judge