*McHugh v. Johnson et al.*, No. 686-7-15 Cncv (Mello, J., May 9, 2017).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                    **CIVIL DIVISION**
**Chittenden Unit**                                   **Docket No. 686-7-15 Cncv**

**CAROL MCHUGH,**
         **Plaintiff**

         **vs.**

**SHAUNA L. JOHNSON and**
**PROGRESSIVE NORTHERN**
**INSURANCE COMPANY,**
         **Defendants**

## RULING ON PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF DANIEL PARKKA

This is a civil action to recover damages for personal injuries which Plaintiff Carol McHugh allegedly sustained on October 7, 2013, when she was rear-ended by the Defendant Shauna L. Johnson while Plaintiff was stopped at a red light. The court has already entered summary judgment in favor of Plaintiff on the issue of liability. The issue remaining for the jury is whether the Defendant's negligence caused any injury to the Plaintiff or damage to her vehicle.

Plaintiff has moved for an order precluding Daniel Parkka, Defendant's accident reconstruction expert, from testifying at trial. Defendants Johnson and Progressive Northern Insurance Company oppose the motion. Plaintiff is represented by Robert Luce, Esq., Defendant Johnson is represented by Andrew C. Boxer, Esq. and Defendant Progressive is represented by Susan J. Flynn, Esq.

Mr. Parkka is a former police officer with years of experience in accident reconstruction. He also claims experience in the auto body business. In this case he reviewed photographs that were taken by an insurance adjuster of the vehicles after the accident as well as damage estimates of the vehicles prepared by an adjuster. In addition, he reviewed a police report on the collision, the Defendant Johnson's deposition testimony, and manufacturers' specifications and other data relating to the bumpers on each of the vehicles. From this information, particularly the condition of the bumpers and Johnson's vague estimate of her speed at the time of the collision, Mr. Parkka concluded that this was a minor collision, that Defendant Johnson's vehicle was traveling less than 5 mph at the time of the collision, and that the collision generated a g-force upon the Plaintiff of somewhere between 0.87 and 1.7.

In addition, Mr. Parkka reviewed a number of published studies that looked into the relationship between g-forces and injuries in automobile accidents and other activities of daily living. From these studies he concluded that the forces which were generated in this accident

were no greater than would be produced by hitting a pothole, a speed bump or a rut and were comparable to the forces that one would experience from a sneeze, or a slap on the back, or the simple act of sitting from a standing position. Although Mr. Parkka acknowledges that he has no training, experience or expertise in biomechanics, he plans to also testify that, in his opinion to a reasonable degree of scientific certainty, based upon the test data and studies that he read and considers to be reliable: there is "a negligible chance of experiencing long-term (greater than one week) injury symptoms as a result of low-speed, rear-impact collisions" such as this one; rear-end collisions of less than 5 mph "do not cause lingering 'whiplash' injuries in otherwise healthy individuals;" and "at speed changes up to 5 mph, the duration of discomfort can be expected to require little, if any, medical treatment" (Parkka Report, pp. 9 and 10).

Plaintiff contends that Parkka's opinions as to the speed of Defendant's vehicle at the time of impact and the g-forces generated by the collision must be excluded because they are not grounded in science and are unreliable. Plaintiff points out that Parkka never inspected the vehicles themselves, only photographs of the vehicles and damage estimates prepared by an insurance adjuster following the collision. Plaintiff further contends that attempting to estimate a vehicle's speed based solely on bumper damage is not a generally accepted scientific methodology. In addition, Plaintiff points out that Defendant Johnson admitted in her deposition that she was unsure of her estimates of distance and speed.

In the alternative, Plaintiff argues that the court should preclude Mr. Parkka from testifying about injuries that can or cannot occur in low-impact rear-end collisions because he lacks the requisite credentials to testify on those subjects. Moreover, Plaintiff points out that Parkka's opinions on this subject conflict with those of another defense expert, Michael J. Kenosh, M.D., who will testify that there is no correlation between the speed of a rear-end collision and the severity of injuries that can result from such collisions. In addition, Plaintiff contends that allowing Mr. Parkka to testify as to the biomechanics of the accident would create a danger of unfair prejudice and would confuse and mislead the jury.

Defendants oppose the Plaintiff's motion and argue that that the opinions Mr. Parkka reached as to the speed of Defendant Johnson's vehicle and the g-forces generated by the collision are well within his expertise in accident reconstruction. Although Defendants acknowledge that some of Mr. Parkka's testimony "touches tangentially on biomechanics," it should nevertheless be allowed because "it is just with respect to one small area of that field, with which accident reconstruction, specifically the low-speed-impact area of accident reconstruction, overlaps" (Opposition, p. 2).

The admissibility of expert testimony is governed by V.R.E. 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 is intended to create "a flexible standard requiring only that expert testimony be both relevant and reliable to be admissible." 985 Associates, Ltd. V. Daewoo Electronics AM., Inc. 2008 VT 14, ¶ 6, 183 Vt. 208. The Rule applies not only to scientific knowledge, but also to technical and other specialized knowledge. Id. ¶ 7. The goal of the Rule is "to keep misleading 'junk science' propagated primarily for litigation purposes out of the courtroom while simultaneously opening the door to well-reasoned but novel scientific or technical evidence." Id. ¶ 8.

In determining whether an expert's opinion is sufficiently rooted in scientific, technical or other specialized knowledge to be admissible into evidence, the court must consider the following four nonexclusive factors: (1) whether the theory or technique involved is capable of being tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential error rate associated with the technique; and (4) whether the theory or technique has been generally accepted in the scientific community. State v. Pratt, 2015 VT 89, ¶ 17, 200 Vt. 64. However, the Vermont Supreme Court has noted that these four factors "are not exhaustive, and a trial court has broad discretion to determine, on a case-by-case basis, whether some or any of the factors are relevant in evaluating he reliability of expert evidence before it." Id. ¶ 19.

The court agrees with the Defendants that Mr. Parkka's opinions as to the speed of Defendant Johnson's vehicle at the time of the collision and the g-forces generated by the collision are well within his expertise in accident reconstruction. His speed and force figures were derived using standard mathematical formula, and although he did not inspect the vehicles himself, he did review photographs taken of the vehicles after the accident as well as damage estimates prepared following the collision. The fact that the photographs and damage estimates were prepared by insurance adjusters, and that he also relied on Defendant Johnson's vague deposition testimony, go to the weight to be given to his opinions, not their admissibility. Similarly, the fact that others in the scientific community question the propriety of basing speed estimates on bumper damage may be fodder for cross-examination, but it does not warrant excluding the testimony as unscientific.

The court also agrees with the Defendants that Mr. Parkka may be permitted to testify as to how the g-forces generated in this accident compare with the g-forces that are generated by other common experiences, such as hitting potholes, sneezing, and sitting, etc. This information is within his expertise and may aid the jury in understanding what a force of 0.87-1.7 g's means.

However, the court agrees with the Plaintiff that Mr. Parkka should not be permitted to testify that there is "a negligible chance of experiencing long-term (greater than one week) injury symptoms as a result of low-speed, rear-impact collisions" such as this one, or that rear-end collisions of less than 5 mph "do not cause lingering 'whiplash' injuries in otherwise healthy individuals," or that "at speed changes up to 5 mph, the duration of discomfort can be expected to require little, if any, medical treatment." These are subjects far beyond Mr. Parkka's competence to address. He is not a physician and has no education, training or experience in the field of biomechanics. His opinions on these matters are based solely upon what he has read in various published studies and his untutored assessment of what in those reports is important and

what that information means.  Because of Mr. Parkka's lack of expertise in medicine or biomechanics, the court cannot have any confidence that he has interpreted the information that he read in those reports correctly, accurately determined what in those reports is relevant to this case and what is not, or applied their findings reliably to the facts in this case.  These portions of Mr. Parkka's expected testimony constitute precisely the kind of "misleading 'junk science' propagated primarily for litigation purposes" that the Vermont Supreme Court says should be kept "out of the courtroom."  Daewoo, 2008 VT 14, ¶ 8.

The court also agrees with the Plaintiff that allowing Mr. Parkka to testify as to the biomechanics of the accident would create a danger of unfair prejudice and would confuse and mislead the jury.  At the Daubert hearing that the court held on February 8, 2017, in this case, Mr. Parkka acknowledged that he has not studied biomechanics and that he does not intend to testify as to whether this accident did or did not cause any injury to the Plaintiff.  However, there is a very significant risk that, if he were allowed to testify to the opinions set forth above, a jury would be mislead into believing that he had testified that the Plaintiff probably suffered no significant injury in the accident, and the jury would be further mislead into giving that opinion greater credence than it deserves, given Mr. Parkka's lack of qualifications on that subject.

Lastly, the court also agrees with the Plaintiff that a jury would likely be confused by the obvious inconsistency between Mr. Parkka's proposed testimony and the opinion of Dr. Kenosh to the effect that there is no correlation between the speed of a rear-end collision and the severity of injuries that can result from such collisions.

## **ORDER**

For the foregoing reasons, Plaintiff's Motion in Limine to Exclude Testimony of Daniel Parkka is GRANTED in part and DENIED in part.  Mr. Parkka will be allowed to testify as to the speed of Defendant Johnson's vehicle at the time of the collision, the g-forces generated upon the Plaintiff in the collision, and how those g-forces compare to other commonly-experienced events.  Mr. Parkka will not, however, be allowed to testify as to the likelihood or unlikelihood of injury from accidents such as the one in this case, or the biomechanics of this accident, or the contents of published studies that he has read on those subjects.

SO ORDERED this 9th day of May, 2017

_____

Robert A. Mello, Superior Judge

4