Filed 07/30/24

**VERMONT SUPERIOR COURT**
Orleans Unit
247 Main Street
Newport VT 05855
802-334-3305
www.vermontjudiciary.org



**CIVIL DIVISION**
Case No. 22-CV-00461

| Lianne Kramer, et al v. Town of Derby |
|---|

## ENTRY REGARDING MOTION

Title:       Motion in Limine to Exclude Testimony by A. Vernon Woodworth, FAIA (Motion: 2)
Filer:       Brian P. Monaghan
Filed Date:  April 10, 2024

The motion is GRANTED IN PART and DENIED IN PART.

Defendant Town of Derby seeks to exclude the testimony and opinion of Plaintiffs' expert witness, A. Vernon Woodworth, FAIA, in the present matter. After reviewing Woodworth's opinion and the two primary source on which he bases his opinion, the Court agrees that portions of the opinion should be struck as irrelevant to the present matter under V.R.E. 702, but other portions of the opinion are relevant and should be allowed as Defendant's objections go to the weight and quality of the opinion, rather than its admissibility.

This is a negligence case involving the clearing of a drainage culvert running next to a town road and under the Kramer Plaintiffs' driveway. On or about April 2, 2019, employees for the Town of Derby performed maintenance work along the Salem Derby Road, a public right of way that runs in front of the Kramers' home. This work consisted of removing gravel and other material that had accumulated in existing culvert ditches alongside Salem Road that bifurcated with the end of the Kramers' driveway.

Later that same day, Ms. Kramer walked to the end of her driveway to get her mail. When she reached the mailbox in an area at the edge of the driveway, next to the culvert, Ms. Kramer alleges that the ground gave way. She fell into the culvert, injuring her leg.

The essence of Woodworth's opinion is that the Town employees made the sides of the culvert too sharp and steep, and that the ground became unstable, resulting in Ms. Kramer's fall.

Woodworth opines that the Town employees' actions violated both OSHA standard 2226-10R 2015 and the Town of Derby's Road and Bridge Standards, specifically illustration G shown on standard B-71, which was incorporated as page 9 of the Town standards, and which shows a gradual grade from the bottom of a culvert to the top of a driveway.

The Town objects to Woodworth's testimony on two grounds. First, Woodworth's citation and reliance of OSHA standard is irrelevant to the ditching work being done, and it renders his expert opinion infirm, by extension. Second, Woodworth's reliance on the Town's Bridge and Road Standards are improper because they were adopted after the incident and involve B-71 standards for new construction, which do not apply existing driveways, which may or may not have been constructed with the proper sloping grade transitions between culvert and driveway.

The Town has not deposed Woodworth, but it seeks to strike his testimony based on the materials relied upon in his expert disclosure.

The standard of review for whether an expert opinion may go before a jury is found under V.R.E. 702. While the Town has characterized its challenge as addressing the typical *Daubert* issues of applying appropriate principles and methodologies, the actual issue is relevance. *985 Associates, Ltd. v. Daewoo Electronics America, Inc.*, 2008 VT 14, ¶¶ 6, 7. The enumerated portions of Rule 702 establish the basis for analyzing an expert opinion's reliability. To be reliable, an expert's opinion must (1) have sufficient facts or data; (2) be the product of reliable principles and methods; and (3) reflect reliable applications of principles and methods to the facts of the case. V.R.E. 702. Woodworth's opinion, albeit brief, appears to have the critical hallmarks of reliability—he has reviewed pictures of the site and reviewed narratives of the incident from Ms. Kramer. He has indicated that he is a trained architect and life safety and code consultant with a background in code enforcement. His analysis of the issue seeks to apply OSHA code standards along with state and local standards for how driveways and culverts should look and perform.

In this respect, the Court sees no reliability issue with Woodworth's opinion that would trigger a limitation under the *Daubert* standard.. The fact that he is referencing OSHA standards that do not strictly apply to the general public is not dispositive of the admissibility of his opinion. *In re LaBerge NOV*, 2016 VT 99, ¶ 31 (noting that expert may use nonbinding standards, including OSHA

standards, to inform their opinion).  The fact that Woodworth is citing town standards that were not adopted until after the incident is also permissible.[1]  Id.

Determining reliability, however, only solves half of the Rule 702 equation.  The expert opinion and testimony must also be determined to be relevant before it may be presented to the trier of fact.  *985 Associates, Ltd.*, 2008 VT 14, at ¶ 7 ("the trial court must therefore ensure that all expert testimony is both relevant and reliable before it is presented to the trier of fact.") (citing *Kumho Tire, Co. v. Carmichael*, 526 U.S. 137, 147–48 ) (emphasis added).  Relevance is often called the first factor of determining whether an expert witness's testimony is admissible.  29 WRIGHT & MILLER, FED. PRAC. & PROCED. EVID. § 6265.2 (2d.ed. 2024 update).  At its most fundamental, relevance under Rule 702 is a question of whether the "help" provided by expert is related to the facts at issue.

In this case, there is an important distinction.  The culverts at issue were not created in April 2019, and the general shape and angle of the culverts existed prior to these repairs.  What is at issue is whether the town employees acted in a manner that violated their duty to clean out the culverts in a manner consistent with what a reasonable municipal highway worker would do to clean and maintain culverts or to take action if the work resulted in any destabilization of the area.

What is not at issue is what standards or duties a town employee had to follow to install, create, or even reconstruct a culvert.  That is because this was not within the scope of the April 2019 work.  It may be argued that it was the Town's responsibility to construct or re-build culverts in a certain manner, but that would be an obligation for the Town and outside the scope of the present complaint, which by its plain language is limited only to the actions of the individual town employees on April 2, 2019.

In this respect, the OSHA and the Derby Road standards have questionable relevance in that both address the creation of a culvert but not the maintenance of one.  See OSHA 2226-10R 2015 at 1 (noting that OSHA standards apply to all open excavations made in the Earth's surface); Vt. Agency of Transportation B-71 Standard at n.1 ("This sheet is intended for use by designers on highway projects and in conjunction with a permit for work within highway rights of way . . . .").

---

[1] The B-71 driveway and intersection standards promulgated by the Vermont Agency of Transportation have been in place for over 25 years and are often cited as the standard for new construction.  See *In re Appeal of Thomas J. Baribault*, 2000WL35522102, Dckt. No. 165-9-98 Vtec (May 29, 2000) (Wright, J.) (citing to B-71 standards in place during a 1997 application); see also *In re Woodstock Community Trust*, 2011WL5112897, Dckt. No. 203-10-09 Vtec (Oct. 14, 2011) (Wright, J.) (applying B-71 standards as proof project met or exceeded local standards).

Neither the OSHA, nor the Town Road Standards address how to clean out or perform maintenance on an existing culvert that has already been constructed.

This distinction has implications to the relevance of Woodworth's opinion. For example, the B-71 standards require a gentle grade from the bottom of a culvert to the top of the driveway, but this standard is for the construction of such a transition. It does not address what steps or measures should be taken when the existing culvert has a more acute angle and must be cleaned out. Nothing in the B-71 standard requires or addresses whether a Town worker must take certain steps in the cleaning out a culvert or warn or flag the site after such work. Neither does the cited OSHA sections lay out what standards to apply to such a maintenance job.

To the extent that Plaintiffs seek to introduce Woodworth's expert opinion to state that the Town Road Employees were obligated to follow the OSHA and Town Road Standards or that the standards required the Town Road Employees to re-construct or re-configure the grade between the bottom of the culvert and the top of the bank, Defendant's Motion is **Granted**, and this portion of the opinion is **not allowed**.

In reviewing the expert's opinion, however, the Court finds that Woodworth's opinion could also be introduced to establish several relevant elements. First and foremost, Woodworth's opinion states that the area in question was unstable and required additional care. In this respect, the OSHA and Town Road Standards are not the standards of care that the employees were obligated to use, but they were evidence that the employees needed to act cautiously as the area was out of compliance with normal culvert standards. See *Klein v. District of Columbia*, 409 F.2d 164, 166-67 (D.C. Cir. 1969) (noting that a non-binding building code was relevant to formulating a standard of care). In this respect, the OSHA and Town Road Standards inform Woodworth's opinion about both instability of the bank before and after the work was done as well as the causation. In other words, while it does not establish what steps the employees should or should not have taken, it does indicate the nature and condition of the site, which by extension informs Woodworth's opinion about what kind of care the Town Road Employees should have taken.

While the Town disagrees with this opinion, its objections go to the credibility and ultimate admissibility of the opinion. As such, they are not appropriate for a motion in limine. *State v. Dubois*, 150 Vt. 600, 602 (1988). For these reasons, the Town's Motion in Limine is **Denied** to the

extent that it seeks to exclude Woodworth's opinion about the inherent danger of the slope area, the general standard of care, and his causation arguments.

## ORDER

Based on the foregoing, the Town's Motion in Limine is **Granted in Part** and **Denied in Part**. The portions of Woodworth's opinion suggesting that the OSHA guidelines and Road Standards form a specific standard of care for the Town are not relevant to the present matter as they invoke a duty to either build or reconstruct that is not at issue in this case, and they may not be put before the jury as proof of such standard. The portions of Woodworth's opinion that find the bank area was unstable based on the nature of the vertical slope along with the opinion that this instability gave rise to a heightened standard of care, and evinces causation are allowed.

Electronically signed on 7/29/2024 11:35 PM pursuant to V.R.E.F. 9(d)

Daniel Richardson
Superior Court Judge