2013 VT 103



State v. Scott (2012-186)

 

2013 VT 103

 

[Filed 18-Oct-2013]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2013 VT 103
 
  


 No. 2012-186
 
  


 State of Vermont
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Superior Court, Franklin Unit,
 
 
  
 
 
 Criminal Division
 
 
  
 
 
  
 
 
 Christopher Scott
 
 
 May Term, 2013
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Robert
 A. Mello, J.
 
 
  
 
 James A. Hughes, Franklin County State’s Attorney, St.
Albans, for Plaintiff-Appellee.

 

Matthew F. Valerio, Defender General, Anna Saxman, Deputy
Defender General, and 

  Thomas Tarnow, Legal Intern, Montpelier, for
Defendant-Appellant.

 

 

PRESENT:  Reiber, C.J., Dooley, Skoglund, Burgess and
Robinson, JJ.

 

 

¶ 1.            
SKOGLUND, J.   Defendant appeals his jury conviction
for negligent operation of a motor vehicle and the resulting sentence.  He
asserts that the trial court impermissibly allowed the State’s crash
reconstruction expert to testify about defendant’s speed at the time of the
collision.  Defendant also contends that, at sentencing, the trial court
erred in considering the death that resulted from the accident as a factor in
sentencing.  We affirm defendant’s conviction and sentence.

¶ 2.            
The record reveals the following facts.  While driving several
colleagues from work in his pick-up truck on Lake Road in St. Albans, defendant
recognized a coworker traveling up ahead.  As a joke, defendant passed the
coworker’s vehicle on the left, crossing a double-yellow line. 
Defendant’s passing speed is not clear from the record, but by all accounts it
exceeded the posted 40 miles per hour limit.  Defendant completed the pass
and returned to the right lane.  Some evidence suggests he began to
decelerate as his truck neared the approaching intersection with Kellogg
Road.  

¶ 3.            
Meanwhile, the decedent driver, who was travelling south on Kellogg Road
with his mother as a passenger, had reached the intersection of Lake and
Kellogg Roads.  The decedent turned left onto Lake Road either as
defendant was passing the coworker’s vehicle or immediately afterwards. 
About three seconds after defendant returned to the right lane, defendant’s
truck collided with the decedent’s car.  The decedent’s car spun 180
degrees, stopping on Lake Road near the intersection.  Defendant’s truck
slid, bounced, or rolled off the road through a barbed wire fence and came to
rest in a farmer’s field.  The decedent died from injuries sustained
during the crash; defendant suffered a broken leg.  

¶ 4.            
A captain of the Franklin County Sheriff’s Department, certified as an
accident reconstructionist by the Institute of Police Technology and Management,
visited the scene, reviewed evidence gathered by the responding law enforcement
officials and performed on-site testing.  As part of his process, he
pulled a drag sled—a weighted sled with attached scales—over the road and grass
surfaces where the vehicles had traveled.  He used a mathematical formula
to determine the “drag factor,” or the amount of friction existing between a
moving vehicle and the ground, generated by these surfaces.  He
incorporated the drag factors, estimated vehicle weights, post-crash travel
distances, and braking estimates into other formulas to calculate the momentum
required to move the vehicles from the point of impact over those surfaces to
their final resting positions.  Working backward from these calculations,
and accounting for the energy absorbed by the crash, the officer concluded that
defendant had been traveling 61 miles per hour when his truck struck the
decedent’s car.  

¶ 5.            
Defendant was charged with grossly negligent operation of a motor
vehicle, death resulting, pursuant to 23 V.S.A. § 1091(b).  Before
trial, defendant moved to exclude the speed calculation evidence as
inadmissible under Vermont Rule of Evidence 702, arguing that the crash
reconstruction expert’s analysis was scientifically unreliable.  The court
held a motion hearing at which the State and defendant each presented expert
testimony from accident reconstructionists.  The court ruled that
defendant’s concerns about the testimony of the State’s expert went to the
weight of the evidence, not its admissibility, and denied defendant’s
motion.  The State’s expert testified at trial, as did the passengers in
defendant’s truck who offered a range of pre-crash speeds from 45 to 55 miles
per hour.  Defendant called his own expert to testify that the speed
calculations of the State’s expert were unreliable.  The jury acquitted
defendant of grossly negligent operation but convicted him of the lesser
included offense of negligent operation under 23 V.S.A. § 1091(a).

¶ 6.            
Before sentencing, defendant asked the court to determine that, as a
matter of law, the decedent’s family members could not be “victims” entitled to
speak at the sentencing hearing.  Defendant argued that because his
conviction for negligent operation did not contain any requirement of injury or
harm, the decedent could not have been injured as a “direct result” of his
negligence and so neither the decedent nor his family members could be
“victims” for sentencing purposes.  The trial court indicated that it
would decide at the sentencing hearing whether to make a finding as to
causation, and consequently, whether the decedent’s family members would be
entitled to testify.  

¶ 7.            
At the sentencing hearing, the court found that defendant was travelling
between 50 and 55 miles per hour on impact, rejecting both the State’s expert
testimony offering a speed of 61 miles per hour and defendant’s assertion of 45
to 50 miles per hour.  Noting that the parties had stipulated that the
accident caused the decedent’s death, the court also found that “defendant’s
negligence was in fact a direct and substantial cause of the accident and,
therefore, a proximate cause,”[1]
and permitted the decedent’s mother to speak as a “victim” of defendant’s
crime.  Defendant spoke on his own behalf.  The court
sentenced defendant to a prison term of 30 days to one year, with 30 days to
serve and a three-year term of probation.  This appeal followed.  

I.

¶ 8.            
Defendant first contends that the trial court erred in denying his
motion in limine and permitting the State’s crash-reconstruction expert to
testify about defendant’s speed at the time of the collision. 
Specifically, defendant claims that by using a drag sled on grass to calculate
drag factor and assuming that defendant’s tires were locked and fully inflated,
the State’s expert applied insufficient facts to an unreliable scientific
method.  We find no error. 

¶ 9.            
Vermont Rule of Evidence 702 provides that a qualified expert may
present testimony that helps the factfinder understand the evidence or
determine a disputed fact if: “(1) the testimony is based upon sufficient facts
or data, (2) the testimony is the product of reliable principles and methods,
and (3) the witness has applied the principles and methods reliably to the
facts of the case.”  As Vermont’s evidentiary rules are “essentially
identical” to the federal rules, we have adopted federal principles for
admission of expert testimony.  State v. Brooks, 162 Vt. 26, 30,
643 A.2d 226, 229 (1993).  These standards provide that admissible expert
testimony need only be both relevant and reliable, directing trial courts to
act as gatekeepers and screen expert testimony before the jury hears it.  Daubert
v. Merrill Dow Pharm., Inc., 509 U.S. 579, 589 (1995); 985 Assocs., Ltd.
v. Daewoo Elec. Am., Inc., 2008 VT 14, ¶ 6, 183 Vt. 208,
945 A.2d 381.  

¶ 10.        
Because defendant does not dispute the relevancy of the State’s expert
testimony, we address only its reliability.  Reliable expert testimony is
“sufficiently rooted in scientific knowledge,” that is, grounded in scientific
methods and procedures rather than mere “subjective belief or unsupported
speculation.”  State v. Streich, 163 Vt. 331, 343, 658 A.2d 38, 47
(1995).  In assessing whether an expert’s assertion is reliable, a court
may be guided by the following factors: (1) whether the applicable theory or
technique can be tested; (2) whether it has been subjected to peer review and
publication; (3) its known or potential error rate; and (4) whether it has been
generally accepted by the scientific community.  Id. (citing Daubert,
509 U.S. at 593-97).  These factors are not exhaustive, and a trial court
has “broad discretion to determine, on a case-by-case basis, whether some or
any of the factors are relevant in evaluating the reliability of expert
evidence” before it.  Daewoo, 2008 VT 14, ¶ 8; see also Daubert,
509 U.S. at 589 (rejecting the “general acceptance” test, once the “exclusive
test for admitting expert scientific testimony,” as incompatible with the more
liberal parameters of Rule 702).  

¶ 11.        
We review the trial court’s decision to admit expert testimony for abuse
of discretion.  Daewoo, 2008 VT 14, ¶ 9.  Our deferential
posture, however, does not preclude this Court from “engag[ing] in a
substantial and thorough analysis of the trial court’s decision and order to
ensure that the judge’s decision was in accordance with Daubert and our
applicable precedents.”  State v. Burgess, 2010 VT 64, ¶ 11, 188
Vt. 235, 5 A.3d 911 (quotation omitted).

¶ 12.        
This Court has emphasized in prior cases that “Daubert presents
an admissibility standard only.”  Id. ¶ 12 (quotation
omitted).  In fact, we adopted Daubert specifically to promote more
liberal admission of expert evidence.  Id. (citing State v.
Tester, 2009 VT 3, ¶ 18, 185 Vt. 241, 968 A.2d 895); see also Daewoo,
2008 VT 14, ¶ 9 (noting this Court’s intent to “broaden[] the types of expert opinion
evidence that could be considered by the jury at trial”).  The central
purpose of judicial gatekeeping under Rule 702 is to screen out potentially
confusing or misleading “junk science” that was “propagated primarily for
litigation.”  Daewoo, 2008 VT 14, ¶ 8.  As
noted by the U.S. Supreme Court, “[v]igorous cross-examination, presentation of
contrary evidence, and careful instruction on the burden of proof are the
traditional and appropriate means of attacking shaky but admissible evidence.” 
Daubert, 509 U.S. at 596.  When faced with questionable scientific
evidence, such as that which is “well-grounded but innovative,” id. at
593, a court should focus its Rule 702 inquiry “solely on principles and
methodology” and rely on the party opponents to expose the weaknesses of expert
conclusions.  Id. at 595; see also Burgess, 2010 VT 64, ¶
12.

¶ 13.        
Within the confines of Rule 702, we apply these principles to the facts
at issue and conclude that because the State’s crash reconstruction expert offered
a sufficiently reliable foundation for his testimony, the trial court properly
allowed the jury to hear it.  The State’s expert, an experienced police
officer certified as a crash reconstructionist, testified that the mathematical
formulas he used to calculate defendant’s speed are standardized, tested,
published, and nationally accepted within his field, with a potential margin of
error that he mitigated by using conservative estimates when making assumptions
about certain variables.  The State’s expert also testified that he
applied these calculations to the facts of the collision in accordance with his
crash reconstruction training.  He agreed that using a drag sled on grass
instead of pavement was not ideal, but explained that it was the best technique
available to him to estimate the drag factor—an essential factor in his speed
calculations—of that surface.   

¶ 14.        
We acknowledge that other experts in the field, who generally allow that
a drag sled can precisely determine drag factor over dry, paved surfaces, find
its relative accuracy on other types of surfaces to be lacking.[2]  This alone, however, does not
transform the latter uses into misleading “junk science” to be categorically
excluded under Rule 702.  See Amorgianos v. Nat’l R.R. Passenger Corp.,
303 F.3d 256, 267 (2d Cir. 2002) (“Where an expert otherwise reliably utilizes
scientific methods to reach a conclusion, lack of textual support [for the
specific use] may go to the weight, not the admissibility, of the expert’s
testimony.” (quotation omitted)).  Instead, this use qualifies as a
well-reasoned but novel application of a traditionally accepted
technique.  See Burgess, 2010 VT 64, ¶ 17 (“[A] battle of the
experts . . . should be played out for the finder of fact, not
excluded as a matter of law pretrial.”).  Defendant had ample opportunity
to explore the weight to be given to the speed estimate offered by the State’s
expert through cross-examination, the testimony of his truck’s passengers, and
the presentation of his own expert’s contrary opinion.  

¶ 15.        
We also disagree with defendant’s assertion that the State’s expert
lacked sufficient data to reliably implement his accident reconstruction
techniques.  It is true that “data inputs are appropriately within the
purview of Daubert and V.R.E. 702,” USGen New England, Inc. v. Town
of Rockingham, 2004 VT 90, ¶ 29, 177 Vt. 193, 862 A.2d 269, and that the
State’s expert estimated or assumed the values of certain variables necessary
to his calculations.  The expert, however, accounted for each assumption
by testifying on direct and cross-examinations at the motion hearing and at
trial about each inference he made from the available facts.  In
particular, the State’s expert explained that, in his drag factor calculations,
he treated each vehicle as if its front wheels were locked because of his
knowledge about the individualized front-end damage sustained by each vehicle
in the collision.  On cross-examination, he acknowledged that he did not
lift the vehicles post-crash to test their wheels and that he used values based
on inflated tires in his calculations even though the minimal skid marks at the
scene might have resulted from deflated tires.  

¶ 16.        
Defendant’s expert testified, in contrast, that scientific tests have
shown “a substantial difference in drag factors on the grass surface” as
compared to pavement.  He declared the State’s expert’s estimation of the
drag factor of the grass was scientifically invalid because there was no evidence
to support the assumption that the truck’s wheels were locked “through the
entire process of this collision.”  

¶ 17.        
In this way, the estimates and assumptions of the State’s expert were
both rationalized and challenged, exhibiting the give-and-take of the
adversarial process rather than proof of unsupported speculation to be screened
from the jury.  As the trial court concluded, any concerns about the
estimates or the inferences made by the State’s expert go to the weight to be
granted the proffered evidence, not to its admissibility.  See, e.g., Burgess,
2010 VT 64, ¶¶ 13, 15 (finding the court’s concern that the expert, who failed
to consider multiple factors critical to an analysis of defendant’s
breathalyzer test, lacked sufficient information to make an accurate analysis
was valid but went to the evidence’s weight, not its admissibility).  The
court was therefore within its discretion to permit the State’s expert to
testify before the jury and to allow the defense to discredit the expert’s
speed calculations through cross-examination and the offering of the testimony
of its own expert and lay witnesses.

II.

¶ 18.        
Defendant next contends that the sentencing court impermissibly
determined facts and considered victim impact testimony not properly before
it.  Vermont law entitles a victim of a listed crime to speak at any
sentencing proceedings concerning the defendant’s conviction.  13 V.S.A.
§ 5321(a)(2).  A “victim” is defined in relevant part as “a person
who sustains physical, emotional, or financial injury or death as a direct
result of the commission or attempted commission of a crime.”  Id.
§ 5301(4).  Where a “victim” is unable to exercise the rights granted
by statute, a family member may address the court on his or her behalf.  Id.
§ 5318.  At sentencing, a victim may express views concerning the
crime against him or her and the person convicted and the court “shall consider
any views offered at the hearing by the victim.”  Id.
§ 5321(c).  Here, the trial court permitted the decedent’s mother,
herself a survivor of the accident, to testify and have her views considered at
defendant’s sentencing hearing.  

¶ 19.        
At the sentencing hearing, the State argued that “defendant’s criminal
action in operating in a negligent manner and the speed and the momentum he
carried through from initiating that negligence, making the pass on the
double-yellow line . . . still speeding through the warning area before the
intersection . . . was the major cause of the collision.”  The court agreed
and found by a preponderance of the evidence that defendant’s negligence was a
proximate cause of the decedent’s death and that the decedent was a “victim”
injured as a direct result of defendant’s crime.  The court considered
these findings, the testimony of the decedent’s mother and defendant,
statistics on sentencing for similar convictions, and other factors including
defendant’s age, employment, sincere remorse, and lack of criminal record, and
sentenced defendant to 30 days to serve and a three-year term of probation with
special conditions.[3] 


¶ 20.        
Vermont Rules of Criminal Procedure permit a prosecutor to present to
the court “any information relevant to sentencing.”  V.R.Cr.P.
32(a)(1).  “Sentences are imposed with regard to the situation and nature
of the offender as well as according to the crime charged.”  State v.
Delaoz, 2010 VT 65, ¶ 33, 189 Vt. 385, 22 A.2d 388 (quotation omitted), superseded
by statute on other grounds.  A sentencing court “necessarily has
broad discretion over what information may be considered in fashioning a just
and fair sentence” and may consider “a wide range of factors,” including “the
propensity and nature of the offender, the particular acts by which the crime
was committed, . . . the circumstances of the offense,” and, now, the testimony
of the victim, in order to arrive at a sentence that is both appropriate to the
crime and consistent with the purposes of sentencing.  Id.  ¶
34 (quotation omitted); see also V.R.Cr.P. 32(c)(2) (authorizing inclusion in
presentencing investigation reports of “information on [the convicted
individual’s] characteristics, his financial condition, and the circumstances
affecting his behavior as may be helpful in imposing [a] sentence”).  

¶ 21.        
We conclude that the sentencing court was well within its discretion
when it found that defendant’s negligence was a proximate cause of the accident
and considered the facts of the fatality resulting from the crash, including
its impact on the decedent’s mother, at sentencing.  The jury’s decision
to acquit defendant of grossly negligent operation and convict him of negligent
operation did not, as a matter of law, resolve the issue of causation, and
therefore could not preclude the court from doing so.  At the sentencing
hearing, the court explicitly stated that, while it did not view defendant as
entirely responsible for the accident, a reasonable person could have foreseen
that another driver might enter the low-visibility intersection when it was
dangerous to do so, so that defendant’s criminally negligent choice to speed
through the intersection was a direct and substantial cause of the accident,
notwithstanding the decedent’s own role in the collision.  These findings
are properly based on the facts and circumstances surrounding the accident.
 See 13 V.S.A. § 7030(a) (in determining sentence, court “shall
consider the nature and circumstances of the crime, the history and character
of the defendant, the need for treatment, and the risk to self, others and the
community at large presented by the defendant”).  

¶ 22.        
The fact that causation is not an essential element of negligent
operation does not mean evidence showing that defendant’s negligence
substantially caused a death is irrelevant or improperly considered under a
preponderance of evidence standard at sentencing.  See State v.
Thompson, 150 Vt. 640, 646, 556 A.2d 95, 99 (1989) (finding that sentencing
court properly considered use of force relevant to defendant’s propensities and
circumstances under which he committed the crime, even though evidence of force
had not been required for his conviction, and rejecting claim that due process
required sentencing court to consider only facts proved beyond a reasonable
doubt).  The court did not exceed its broad discretion in considering the
reasons for the accident and the relative contributions of defendant and the
decedent to the tragedy that ensued while trying to understand defendant’s
character and the circumstances of the offense.  These factors, all
“relevant to the determination of an appropriate sentence,” State v. Bushway,
146 Vt. 405, 407, 505 A.2d 660, 661 (1985), were balanced by the court on the
record and resulted in a sentence to serve well within sentencing guidelines. 
See 23 V.S.A. § 1091(a)(3) (setting the maximum sentence at one year for
the first offense of negligent operation of a motor vehicle).  There is no
abuse of discretion here.[4] 


¶ 23.        
Defendant directs this Court to State v. Kenvin to support his
contention that the trial court erred in allowing “victim” participation at
sentencing.  See 2011 VT 123, 191 Vt. 30, 38 A.3d 26.  In Kenvin,
a defendant was acquitted of grossly negligent operation of a motor vehicle,
death resulting, and convicted of the lesser included offense of negligent
operation.  Id. ¶ 3.  The trial court required the
defendant to compensate the decedent’s family under Vermont’s restitution
statute, finding a direct connection between the death resulting from the
accident and the family’s purported expenses.  Id.; see also 13
V.S.A. § 7043.  We reversed, noting that restitution is available
only to the “victim” of a crime, and that “absent any element of injury or
harm, the conviction of negligent operation cannot be causally linked to the
decedent’s death, and thus cannot support a restitution award for any resulting
financial loss.”  Kenvin, 2011 VT 123, ¶ 12.  Defendant claims
that the principle of Kenvin applies equally at sentencing.  

¶ 24.        
Defendant’s reliance on Kenvin is misplaced.  Kenvin
involved a challenge to victim restitution, a limited statutory entitlement as
compared to the broader issue of determining a proper sentence.  See id.
¶ 9 (holding that Vermont’s restitution statute, which is “much narrower” than
those of other jurisdictions, does not permit a decedent’s family members to
recover travel and storage expenses as “victims” of the criminal negligence
that killed decedent (quotation omitted)); State v. Forant, 168 Vt. 217,
222, 719 A.2d 399, 402 (1998) (holding that the restitution statute is
“narrowly drawn”); see also 13 V.S.A. § 7043.  Restitution may be
ordered only as compensation for a crime victim’s “material loss.”  13
V.S.A. § 7043(a)(1)-(a)(2).”[5] 


¶ 25.        
Notwithstanding the identical statutory language defining “victim” for
both sentencing and restitution purposes, the statute allowing a crime “victim”
to testify at sentencing, 13 V.S.A. § 5321(a), requires a more liberal
construction.  Section 5321, unlike the restitution statute, resides
within the statutory chapter devoted to victim rights and benefits, and its
“fundamental objective” is to protect crime victims and ensure that they are
treated with dignity and respect.  Id. § 5303.  “As such,
the statute should be liberally construed to accomplish its purposes.”  State
v. Gibney, 2003 VT 26, ¶ 51, 175 Vt. 180, 825 A.2d 32 (contrasting victim
protection laws with penal statutes requiring protection of criminal defendants). 
The court did not err in finding that the decedent was a victim for purposes of
13 V.S.A. § 5301(4), and because the decedent could not testify himself,
it was appropriate for his mother to testify on his behalf.  Id.
§ 5318.  The sentencing court was within its discretion to consider
the causes of the accident that killed the decedent and resulting impact on the
decedent’s family members. 

Affirmed.

 

 

 

 


  
 
 
  
 
 
 FOR THE
 COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate Justice
 
  











[1]
 The sentencing court found that although decedent entered the
intersection before it was safe to do so, decedent’s action was foreseeable and
thus “did not qualify as an intervening efficient cause that could constitute a
defense to the criminal charge.”  





[2]
 See, e.g., Am. Prosecutors Research Inst., Crash Reconstruction Basics
for Prosecutors: Targeting Hardcore Impaired Drivers 12 (2003), available
at http://www.ndaa.org/pdf/crash_reconstruction_basics.pdf (asserting that a
drag sled should not be used on wet roads or grass because the weight of a
full-sized vehicle on these surfaces, which presses water out from under tires
or furrows tires into the ground, produces a different friction). 





[3] 
Defendant was required to complete the reparatory process, have no contact with
decedent’s family, take a remedial driving course, and seek permission from his
probation officer to drive anywhere but to and from work during his
probation.  





[4] 
In a supplemental filing made after oral argument, defendant cites Commonwealth
v. McCravy, 723 N.E.2d 517 (Mass. 2000), to support his argument that his
sentence could not be based upon a crime that he was acquitted of or with which
he was not charged.  As indicated above, defendant was not sentenced for a
crime that he did not commit, nor was he sentenced for a crime with which he
was not charged.  We thus find defendant’s reliance on this case to be
misplaced.  





[5]
 “Material loss” is limited to “uninsured property loss, uninsured
out-of-pocket monetary loss, uninsured lost wages, and uninsured medical
expenses.” 13 V.S.A. § 7043(a)(2).  An offender may be ordered to pay
restitution “for an offense for which the offender was not convicted” if
pursuant to a valid plea agreement.  Id.
§ 7043(e)(3).