VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.    24-AP-002



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

DECEMBER TERM,  2024

State of Vermont v. Robert Dyer\*

}   APPEALED FROM:
}   Superior Court, Essex Unit,
}   Criminal Division
}   CASE NO. 12-3-20 Excr
Trial Judge: Michael R. Kainen

In the above-entitled cause, the Clerk will enter:

Defendant appeals from his convictions of simple assault and unlawful trespass following a jury trial. He argues that the court erred in denying his request for a self-defense instruction and abused its discretion in sentencing him. We affirm.

Defendant was charged with two counts of simple assault and one count of unlawful trespass in March 2020 following an incident at the Brighton Garage. The following evidence was presented at trial. Craig Goulet, who is seventy-eight years old, is a part-owner of the Brighton Garage. He also owns property on Lakeshore Drive in Island Pond, Vermont. Lakeshore Drive is open to snowmobiling during the winter. Lakeshore Drive intersects with Island View Drive. Mr. Goulet's daughter owns property on Island View Drive, which she rents out through Airbnb. Defendant also owns property on Island View Drive. Island View Drive is labeled as a private drive.

Mr. Goulet testified that in late February 2020, defendant came into the Brighton Garage to speak with him. Defendant was upset that people were driving down Island View Drive, which he claimed to own. Defendant also complained that Mr. Goulet's daughter and her children had bothered defendant's mother. Mr. Goulet asked defendant to leave many times, but defendant kept questioning him. Eventually, defendant exited Mr. Goulet's office. Mr. Goulet then opened the exterior door of the garage and asked defendant to leave. The men were facing one another. Defendant was partially out the door but kept asking questions and Mr. Goulet could not close the garage door. Mr. Goulet again told defendant to leave and not come back. Mr. Goulet put his right hand on defendant's shoulder, told him to get out, and "pushed him out the door." Defendant then hit Mr. Goulet "in the right eye and knocked [him] across the room," "almost to the ground." Defendant began "pounding on [him]." Mr. Goulet cried out to his friend Durwood Humphrey for help. Mr. Humphrey is Mr. Goulet's longtime friend who helps and hangs around the garage. Mr. Humphrey responded by rolling defendant off Mr. Goulet.

Defendant then started hitting Mr. Humphrey. This caused Mr. Humphrey pain. Defendant then resumed attacking Mr. Goulet. Eventually, the two men and other bystanders restrained defendant and the police were called.

Mr. Humphrey also testified. He described a sequence of events similar to Mr. Goulet. He stated that after Mr. Goulet pushed defendant out the door, defendant came back through the door and punched Mr. Goulet, sending him flying. Defendant then went after Mr. Goulet. Mr. Goulet cried out, "get him off me," and Mr. Humphrey put his hand on defendant's shoulder and pulled him off of Mr. Goulet. Defendant came up swinging and hit Mr. Humphrey in the shoulder and other locations. Defendant hit Mr. Humphrey with enough force to back him up and caused Mr. Humphrey pain. Mr. Humphrey tried to get away from defendant. Defendant then turned around and jumped back on Mr. Goulet.

Defendant testified that he lived on Lakeshore Drive with his elderly mother. He went to the garage to discuss several grievances. He stated that Mr. Goulet "flew off the handle" and told him to get out of his office. Defendant did not leave as requested and continued to ask questions. According to defendant, Mr. Goulet opened the garage's exterior door and prevented him from leaving by grabbing the lapels of his jacket. Defendant then "took a crow hop and . . . threw" Mr. Goulet who landed on a chair. Defendant denied punching Mr. Goulet. Defendant stated that he "sense[d]" Mr. Humphrey "coming . . . on [his] blind side;" defendant took a swing at him but didn't connect. He said he suspected that Mr. Humphrey was coming to Mr. Goulet's aid. Defendant said Mr. Humphrey retreated after defendant's swing went over his head.

Defendant was charged with simple assault against Mr. Goulet and Mr. Humphrey. He requested a self-defense instruction for both charges. The court granted his request with respect to Mr. Goulet but not Mr. Humphrey, finding that defendant failed to make a prima facie showing of the elements necessary for self-defense. With respect to the charge involving Mr. Goulet, the court explained that Mr. Goulet and defendant provided differing version of events and, if the jury believed defendant's version that Mr. Goulet was blocking the doorway and then grabbed defendant by the lapels, it might conclude that defendant reasonably felt that there was the possibility of ongoing danger to himself. Defendant denied striking Mr. Humphrey, however, and the jury would either believe Mr. Humphrey or believe defendant. The court found defendant's vague assertion that he saw someone coming at him from the front of the building insufficient to show why defendant acted in a specific way with respect to Mr. Humphrey. It explained that the jury needed to be able to conclude that defendant used only the force necessary to repel Mr. Humphrey's threat and that was missing here.

Defendant was acquitted of assaulting Mr. Goulet but convicted of the remaining charges. On the simple assault count, the court sentenced defendant to six-to-twelve months, all suspended with probation except two days to serve; it imposed a concurrent sentence of zero-to-three months, all suspended with probation, for unlawful trespass. This appeal followed.

Defendant first argues that the court erred by denying his request for a self-defense instruction on the assault charge with respect to Mr. Humphrey. Defendant provides his view of the evidence, asserting that Mr. Humphrey "got involved in the fray to assist the initial aggressor—Mr. Goulet" and that defendant was afraid and took a swing at him. Defendant appears to assert that he admitted to an attempted assault of Mr. Humphrey and this supported his self-defense claim as to the assault charge, in contrast to State v. Fonseca-Cintron, 2019 VT 80, ¶ 5, 213 Vt. 11.

We find no error. The trial court's "obligation to charge on a defendant's theory is limited to situations in which there is evidence supporting the theory." State v. Nunez, 162 Vt. 615, 617 (1994); see also State v. Fonseca-Cintron, 2019 VT 80, ¶ 10 ("A trial court must provide the jury with an instruction on an affirmative defense when the evidence supports that defense."). As we have explained, "[t]he evidence must be sufficient to establish a prima facie case for each element of the defense asserted," and defendant has the "burden to establish a prima facie case for self-defense." Id. (quotation omitted). We have held that:

> a defendant is justified in using a reasonable amount of force if [he] is not the aggressor in the encounter and reasonably believes . . . that [he] is in immediate danger of <u>unlawful</u> bodily harm from the adversary and . . . that the use of such force is necessary to avoid this danger.

Id. ¶ 11 (quotation and alteration omitted) (emphasis added).

As the trial court found, the evidence did not meet this standard. Notwithstanding defendant's suggestion to the contrary, he denied hitting Mr. Humphrey at trial. Defendant testified that Mr. Humphrey "backed off after my swing went over his head." Defendant was charged with assault, not attempted assault, and he "did not admit the elements of the charged crime[], but instead claimed innocence," which undermines his self-defense claim. State v. Buckley, 2016 VT 59, ¶ 20, 202 Vt. 371 (finding no plain error in failure to provide self-defense instruction under similar circumstances, and citing State v. Martin, 2016–Ohio–225, ¶ 27, 57 N.E.3d 411 ("Self-defense is a 'confession and avoidance' affirmative defense in which [defendant] admits the elements of the crime but seeks to prove some additional element that absolves him of guilt.")); see also Fonseca-Cintron, 2019 VT 80, ¶ 12 (similarly concluding that defendant failed to establish entitlement to self-defense instruction where he "denied strangling, hitting, or pulling [the] complainant's hair," which formed the basis of the three domestic-assault charges against him).

There was also no evidence here to show that defendant had a reasonable belief that Mr. Humphrey was attempting to inflict "unlawful bodily harm" on him. See 2 W. LaFave, Substantive Criminal Law § 10.4(a) (3d ed.) (explaining that to "be entitled to use force in self-defense," adversary's force must "be, or at least . . . the defendant [must] reasonably believe it to be, 'unlawful' force—meaning, in general, that it be a crime or tort (generally assault and battery) for the adversary to use the force"). The evidence showed that Mr. Goulet called for help in getting defendant off of him and Mr. Humphrey was trying to assist in that effort by pulling defendant off of Mr. Goulet. Defendant's testimony that he "sensed someone approaching from the blind side" does not provide reasonable justification for assaulting a bystander trying to pull defendant away from Mr. Goulet. The court did not err in denying defendant's request for a self-defense instruction and we reject defendant's arguments to the contrary.

Defendant next asserts that the court abused its discretion in sentencing him. He maintains that the court sentenced him based on conduct for which he was acquitted. Defendant cites the court's statement that he went to the Brighton Garage and "ended up starting this." He asserts that he was "punished for consistently maintaining that he acted in self-defense." Defendant also complains that he was given two days to serve. He argues that he is "a senior

citizen with no criminal record" and incarceration poses a risk to his ability to care for his mother.

"A sentencing court necessarily has broad discretion over what information may be considered . . . to arrive at a sentence that is both appropriate to the crime and consistent with the purposes of sentencing." State v. Scott, 2013 VT 103, ¶ 20, 195 Vt. 330 (quotation omitted). "[O]ur review of sentencing matters is limited," and "we review an imposed sentence for abuse of discretion." State v. Lumumba, 2014 VT 85, ¶ 22, 197 Vt. 315. "Absent exceptional circumstances, we will defer to the court's judgment so long as the sentence is within the statutory limits and was not based on improper or inaccurate information." Id. (quotation omitted).

Defendant fails to show an abuse of discretion here. Mr. Humphrey testified at the sentencing hearing, as did defendant's mother; defendant did not make a statement to the court. Mr. Humphrey believed that defendant needed anger-management and mental-health counseling. Defendant's mother indicated that defendant assisted her at home, including by bringing wood inside for the wood stove, but testified that she was able to do her daily grocery shopping alone. The State argued that a punitive response was warranted in addition to anger-management and mental-health counseling because this was an unprovoked attack at a place of business. It asserted that defendant's behavior indicated a sense of entitlement and belief that he was right while they were wrong. Defendant's attorney argued that this was an isolated incident by an individual with no prior criminal record. She noted that the jury had returned a mixed verdict and thus to say this "was totally unprovoked is not quite true." Counsel maintained that there was no evidence to show that defendant needed mental-health treatment. Defendant sought the imposition of a fine as his sentence, arguing that this would be sufficiently punitive.

The court considered the appropriate sentencing factors in reaching its conclusion and imposed a sentence well within the statutory limits. The court did not sentence defendant for assaulting Mr. Goulet. It found that the evidence showed that defendant initiated the sequence of events that led to the scuffle with Mr. Goulet and when Mr. Humphrey went to help his friend, he was assaulted. The court rejected defendant's argument that this was a minor thing, particularly given defendant's failure to accept responsibility for his actions. The court's statement that defendant started the incident was not "materially inaccurate," State v. Allen, 2010 VT 47, ¶ 7, 188 Vt. 559 (mem.). It is supported by the record, which shows that defendant went to the Brighton Garage to speak with Mr. Goulet, brought up various grievances, and then refused to leave after repeatedly being asked to do so. Both defendant and Mr. Goulet testified that Mr. Goulet first touched defendant and that defendant physically responded by throwing or knocking Mr. Goulet across the room. The jury found that Mr. Humphrey was struck while attempting to assist Mr. Goulet.

In reaching its decision, the court recognized that defendant had no criminal record and that he appeared to take good care of his mother. The court concluded, however, that defendant appeared to have an anger issue which exploded on the day in question, and it would be irresponsible not to address that issue. The court agreed with the State that defendant had acted with a sense of entitlement that day. It thus imposed a sentence that included two days of incarceration to be served on dates chosen by defendant. The court found that this sentence would not grossly inconvenience defendant's mother and it would send defendant a message about his conduct. Defendant largely challenges the court's assessment of the weight of the

evidence with respect to the sentencing factors, and this Court does not reweigh the evidence on appeal.  See <u>State v. Rodriguez</u>, 2023 VT 59, ¶ 18.  There was no error.

<u>Affirmed</u>.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Karen R. Carroll, Associate Justice

_____
William D. Cohen, Associate Justice