Vermont Superior Court
Filed 06/26/25
Caledonia Unit

VERMONT SUPERIOR COURT
Caledonia Unit
1126 Main Street Suite 1
St. Johnsbury VT 05819
802-748-6600
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-03151

---

**Lawrence Roy, Jr. v. North East Vermont Nursing and Rehabilitation, LLC**

---

## ENTRY REGARDING MOTIONS

Title:        Defendant's Motions in Limine (Motions 6-13)
Filer:        William N Smart
Filed Date:   February 21, 2025; February 26, 2025

In this case plaintiff Lawrence Roy, Jr, has sued defendant Northeast Vermont Nursing and Rehabilitation, LLC (Northeast), for negligence and negligent infliction of emotional distress. Plaintiff was admitted to Northeast in the spring of 2021 following an accident that left plaintiff paralyzed. Plaintiff alleges that, because of Northeast's negligence, he developed bed sores that became infected and led to other health complications including admission to Northeast Vermont Regional Hospital (NVRH) on April 21, 2021, and a colostomy at NVRH, which was performed incorrectly. The case is scheduled for jury draw on August 11 and trial beginning on August 25, 2025.

Pending before the court are several motions in limine filed by Northeast. The court will consider each motion in turn.

### 1. Motion to preclude certain testimony by plaintiff's expert Martha Kelso (Motion 10)

Plaintiff has disclosed Martha Kelso, a registered nurse, as an expert in the field of nursing generally and specifically in the field of wound prevention, wound care, and wound management. Northeast seeks to preclude Ms. Kelso from offering opinions regarding (a) medical causation for plaintiff's pressure sores; (b) medical causation for plaintiff's hospitalization; (c) medical causation for plaintiff's colostomy; (d) plaintiff's future medical needs, recovery, or lasting complications; (e) whether regulations from the Centers for Medicare and Medicaid Services (CMS) define the standard of care; and (f) the impact of plaintiff's condition on plaintiff's quality of life, independence, or emotional wellbeing.

Plaintiff generally opposes the arguments in the motion and further argues that because Northeast failed to propound any expert interrogatories, it should not be able limit

who is called as an expert or require that expert testimony be limited to the scope of a written report.[1]

The court will address Northeast's motion as seeking a ruling on admissibility under Vermont Rule of Evidence 702. That rule permits expert opinion testimony by "a witness qualified as an expert by knowledge, skill, experience, training, or education" if such "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." V.R.E. 702. The Vermont Supreme Court has explained:

> [Rule] 702 provides that a qualified expert may present testimony that helps the factfinder understand the evidence or determine a disputed fact if: (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. . . .
>
> [A]dmissible expert testimony need only be both relevant and reliable, directing trial courts to act as gatekeepers and screen expert testimony before the jury hears it. . . .
>
> The central purpose of judicial gatekeeping under Rule 702 is to screen out potentially confusing or misleading "junk science" that was propagated primarily for litigation. . . . . [V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.

*State v. Scott*, 2013 VT 103, ¶¶ 9-12, 195 Vt. 330 (quotations, citations, and alterations omitted).

### a. Medical causation – pressure sores

Expert testimony is generally required to establish the standard of care, breach, and causation in medical negligence cases. *See generally Bittner v. Centurion of Vermont, LLC*, 2021 VT 73, ¶ 34, 215 Vt. 475.

Although the Vermont Supreme Court does not appear to have addressed the specific question raised here, other courts around the country have permitted qualified nurses to testify regarding the standard of care and causation in pressure sore cases. *See, e.g., Frausto v. Yakima HMA, LLC*, 393 P.3d 776, 783 (Wash. 2017) (reversing trial court's ruling that nurse was categorically prohibited from testifying "as to the cause of bedsores in adult quadriplegic patients" and noting "the majority rule throughout the country that

---

[1] As discussed below, plaintiff was nonetheless under a court-ordered obligation to disclose any expert witnesses by September 2023.

nurses may be qualified to testify as experts pursuant to the rules of evidence"); *Freed v. Geisinger Med. Ctr.*, 971 A.2d 1202, 1207 (Pa. 2009) (affirming trial court's ruling permitting nurse to "provide expert testimony not only on the standard of nursing care, but also on the causative relationship between breaches in the standard of care and [plaintiff's] pressure wounds"), *on reargument*, 5 A.3d 212 (Pa. 2010).

Having reviewed Ms. Kelso's qualifications, the court concludes she has specialized knowledge regarding wound care and is qualified to offer expert opinion regarding the standard of care for treating and preventing pressures sores and whether plaintiff's pressure sores were caused by Northeast's alleged departure from that standard of care.

### b. Medical causation – hospitalization

Likewise, the court concludes that Ms. Kelso is qualified to testify as to whether plaintiff's pressure sores required hospitalization.

### c. Medical causation – colostomy

To the extent Ms. Kelso intends to offer expert testimony regarding the medical need for the colostomy plaintiff received at NVRH, her expertise in nursing and wound care does not appear to qualify her to address whether a surgical procedure like a colostomy is medically necessary. The court will accordingly preclude her from testifying as to whether Northeast's alleged negligence caused plaintiff's need for a colostomy.

### d. Plaintiff's future needs

The court concludes that Ms. Kelso's specialized expertise qualifies her to offer an expert opinion regarding plaintiff's recovery and long-term prognosis, as it relates to the pressure sores.

### e. CMS regulations

As noted above, the court concludes that Ms. Kelso is qualified to opine on the applicable standard of care for treating pressure sores, including as applicable, how that standard is informed by relevant regulatory guidelines.

### f. Plaintiff's quality of life

As noted above, the court concludes that Ms. Kelso's specialized expertise qualifies her to offer an expert opinion regarding plaintiff's recovery and long-term prognosis, as it relates to the pressure sores.

Motion 10 is granted in part and denied in part, as set forth above.

## 2. Motion to preclude evidence, testimony, or argument that defendant is legally responsible for subsequent medical negligence (Motion 6)

Plaintiff was transferred from Northeast to NVRH in April 2021 where he underwent a colostomy that was performed incorrectly, necessitating an additional corrective surgery and prolonging his recovery. Northeast seeks to preclude any evidence or argument that it is legally responsible for any subsequent medical negligence that occurred at NVRH.

Northeast argues that the court should decline to follow Restatement (Second) of Torts § 457, which provides that "If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or a negligent manner."

Northeast's argument goes to the issue of proximate cause, an element of plaintiff's negligence claim, which generally "requires a showing that defendant's conduct was legally sufficient to result in liability in that the injurious consequences flowed from the defendant's conduct and were not interrupted by some intervening cause." *Stocker v. State*, 2021 VT 71, ¶ 32, 215 Vt. 432. "Whether or not the negligence of a third person may or may not amount to such an intervening cause turns on the issue of whether or not some such negligent act or intervention was something the original actor had a duty to anticipate." *Est. of Sumner v. Dep't of Soc. & Rehab. Servs.*, 162 Vt. 628, 629 (1994).

As another superior court has noted, although "there appear to be no Vermont cases directly on point, general principles of Vermont are consistent" with Restatement § 457's principle that an original tortfeasor "is bound to anticipate the possibility of negligence by a later doctor attempting to remedy the initial harm." *Robare v. Healey, M.D.*, 2016 WL 9444223, at *3 (Vt. Super. Mar. 17, 2016) (Toor, J.).

A comment to the Restatement provides, however, that "the actor is answerable only for injuries which result from the risks normally recognized as inherent in the necessity of submitting to medical, surgical, or hospital treatment. *He is not answerable for harm caused by misconduct which is extraordinary and therefore outside of such risks*." Restatement (Second) of Torts § 457, cmt. d (emphasis added).

Northeast argues that the mistakes in the colostomy procedure amounted to gross negligence or "extraordinary" misconduct. If so, that would potentially be a sufficient intervening cause to break the chain of causation. The court, however, is unwilling to rule on that issue as a matter of law in response to Northeast's motion in limine.

Northeast further argues that there is no expert testimony linking its alleged negligence to plaintiff's need for a colostomy, and that accordingly even if the court applies the Restatement, plaintiff cannot prove the requisite causation. *See* Restatement (Second)

of Torts § 457 (liability extends only to "harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires"). As noted above, expert testimony is generally required to prove medical causation.

In response, plaintiff suggests that it intends to offer expert testimony on causation for the colostomy. *See* Pl.'s Response 2. But plaintiff has not disclosed any expert besides Ms. Kelso, who as discussed above is not qualified to offer an opinion on the medical need for the colostomy, and the deadline for offering additional experts has long passed. *See* ADR Stipulation (July 31, 2023) ("Plaintiff shall disclose experts by 9/1/2023. Defendant shall depose those experts, if it chooses to do so by 12/15/2023). Although plaintiff argues that Northeast never served expert interrogatories requiring disclosure of its expert witnesses under Rule 26(b)(5), the July 2023 ADR Stipulation, which was adopted by the court as an order and has not been extended, independently required plaintiff to disclose any experts it intends to call at trial. *See* V.R.C.P. 16.2 ("[A] scheduling order controls the subsequent course of the action and takes precedence over any rule with respect to the time for taking any action or the scheduling of actions for trial."); *Hutchins v. Fletcher Allen Health Care, Inc.*, 172 Vt. 580, 58 (2001) ("If a party fails to disclose the intent to offer the testimony of an expert witness within a discovery deadline, the trial court may prevent the non-disclosing party from offering the expert testimony.").

Given that the expert disclosure deadline expired nearly two years ago, and the case is now ready for trial with potential trial dates set, it would be inefficient and prejudicial to Northeast to permit plaintiff to call undisclosed experts to testify at trial. In the absence of expert testimony on the issue of causation for the colostomy, the court will preclude plaintiff from presenting evidence or argument that Northeast's negligence caused the need for the colostomy at NVRH.

Motion 6 is granted.

### 3. Motion to preclude medical bills for lack of supporting expert testimony (Motion 11)

Northeast seeks to preclude plaintiff from presenting any evidence or argument related to plaintiff's medical expenses, unless supported by expert testimony. Although expert testimony is generally required to establish the need for medical treatment, the court is not persuaded that expert testimony is necessarily required to prove the expense of such treatment. As another superior court recently noted:

> There is a split of authority on the type and quantum of evidence necessary to create a jury issue on the reasonableness of medical expenses. As to this divergence of views, some courts apparently hold that an injury victim has not made out a prima facie case on the problem of medical expenses when the victim does not introduce evidence of their reasonable value. Other courts hold that evidence of the amount paid for medical services is evidence of their

reasonable value and supports a verdict based on that evidence-at least when there has been no showing to the contrary. With the proviso added by some courts that a proper foundation must be laid and must precede the introduction of medical and other health care bills, other courts have taken the sound position that evidence presented by bills regular on their face of the amounts charged for medical service is itself some evidence that the charges were reasonable and necessary. The view has been well taken that there is no error in submitting to the jury in a personal injury action the issue of the plaintiffs reasonable and necessary medical expenses on the question of damages, even though there was no direct evidence as to the reasonableness of these charges, where (1) the plaintiff testified as to the approximate amount of the charges, (2) it was at least tacitly conceded that the expenditures were necessary, (3) the charges appeared to be modest, (4) neither party had objected to the charges as being excessive, and (5) there was nothing to show collusion or bad faith.

*Clark v. Amica Mut. Ins. Co.*, No. 22-CV-00882, 2025 WL 1020168, at *2 (Vt. Super. Jan. 23, 2025) (Tomasi, J.) (quoting 3 Stuart M. Speiser, *et al. The American Law of Torts* § 8:30 (Feb. Update Law. Co-op 1986, West Group 1998 Supp.)). Because Northeast "has not cited any authority in Vermont requiring expert testimony to support past medical bills," nor "outlined the precise nature of its dispute of those bills," the court "declines to foreclose nonexpert evidence of reasonableness prior to trial." *See id.*

Determining reasonableness and causation of plaintiff's medical expenses will be a jury question, subject to the rulings above, any objections sustained at trial, and the court's jury instructions.

Motion 11 is denied.

## 4. Motion to preclude unsupported allegations of liability (Motion 12)

Northeast seeks to preclude plaintiff from presenting theories of negligence beyond those expressly pled in the complaint. Specifically, Northeast seeks to limit the evidence to that relevant to "substandard treatment by [Northeast] staff in preventing and managing pressure sores," and to preclude any evidence related to "corporate negligence," "systemic failures in staffing, training, or facility administration." Def.'s Mot. 2. The complaint alleges a series of failures by Northeast to "regularly move" plaintiff and "properly treat" his wounds. *See* Compl. ¶¶ 22-24. Systemic or administrative issues like inadequate staffing or poor staff supervision are potentially relevant to these allegations. Given the sparse discovery and motion practice in this case, the court declines to preemptively limit the evidence plaintiff may present on these issues.

Motion 12 is denied.

5. **Motion to preclude evidence of insurance (Motion 7)**

The parties agree that plaintiff may not present evidence of Northeast's insurance coverage.

Motion 7 is granted.

6. **Motion to preclude evidence of failed facility sale (Motion 8)**

Northeast moves to preclude plaintiff from presenting evidence or argument related to any attempted sale of the facility at issue in this litigation. Plaintiff responds that he has no intent of discussing the sale of the facility, but requests that the parties be able to reference that defendant owned the facility when plaintiff was a resident there but no longer does so. Because Northeast's motion does not seek exclusion of such passing testimony, the parties appear to be in agreement on this issue.

Motion 8 is granted.

7. **Motion to limit excessive publishing of graphic photographs (Motion 9)**

Northeast seeks to preclude plaintiff from excessive publication of graphic photographs of his pressure sores. Northeast concedes, however, that photographic evidence of plaintiff's injuries is relevant. Having not seen the photographs at issue, the court declines to preemptively limit plaintiff's evidence on this issue. At the pretrial conference, the parties and the court should discuss pretrial exchange of exhibits, as well as whether limitations may be appropriate on the frequency or duration publication of graphic photographs, in order to minimize any danger of unfair prejudice.

Motion 9 is denied.

8. **Motion to preclude evidence or testimony regarding the State Operations Manual (Motion 13)**

Northeast seeks to preclude plaintiff from introducing evidence or argument related to a CMS "State Operations Manual," which is a non-binding guidance document for surveyors of long-term care facilities. The court declines to preemptively exclude this evidence. Federal guidance documents can inform industry standards, which in turn, can provide some evidence of the applicable standard of care. Plaintiff does not appear to argue that Northeast was bound by this document, and the appropriate weight to be given to this document and any related testimony can be addressed through jury instructions.

Motion 13 is denied.

**Order**

Motion 6 is GRANTED.

Motion 7 is GRANTED.

Motion 8 is GRANTED.

Motion 9 is DENIED.

Motion 10 is GRANTED IN PART AND DENIED IN PART.

Motion 11 is DENIED.

Motion 12 is DENIED.

Motion 13 is DENIED.


Electronically signed on: 6/25/2025 pursuant to V.R.E.F. 9(d)

_____
Benjamin D. Battles
Superior Court Judge