Filed 02/10/26

VERMONT SUPERIOR COURT
Windham Unit
7 Court Street
Newfane VT 05345
802-365-7979
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-01112

| Giovanni Vecchiarino v. Margit Ridgway, et al |
| --- |

## DECISION ON DEFENDANT SHMUEL PURETZ'S MOTION TO EXCLUDE TESTIMONY OF BRAD LEFEBVRE (MOTION # 21)

In this personal injury action, Plaintiff Giovanni Vecchiarino alleges that he was injured when Defendant Seton King hit a golf ball in an indoor golf simulator room, and the golf ball ricocheted and struck Plaintiff. According to the complaint, Defendant Shmuel Puretz is the principal of Defendant Snow Mansions LLC, a rental property business that rented out the property at 3 Margit Ridgway, in the Town of West Dover, Vermont, to Defendant Alpha Tau Omega Fraternity, Inc., where the golf simulator room was located. Puretz now moves to exclude the testimony of Brad Lefebvre, Plaintiff's identified expert on golf simulators.

Puretz objects to potential testimony from Lefebvre that "that 1) the fabric used to construct the screen which Seton King hit into was improper, 2) the tension on the fabric screen was improper, 3) the fabric screen was placed too close to the back wall of the room such that golf balls could make contact through the fabric screen to the back wall and bounce back, and 4) that when the ball came in contact with the screen it must have pushed the material back sufficiently to make contact with metal bar to which the fabric screen was attached, and then bounced back to hit Plaintiff in the eye." Defendant Shmuel Puretz's Motion to Exclude Testimony of Brad Lefebrve [sic] ("Motion to Exclude") at 5.

Puretz argues that Lefebvre's opinions do not support the requirements of V.R.E. 702 to support Plaintiff's claim of proximate cause. According to Puretz, Lefebvre's opinions require "scientific education and knowledge in the manufacture and construction of such fabrics and screens, golf ball physics, scientific testing to support the hypotheses, and peer reviewed and published support for the testing used to support the opinions." Motion to Exclude at 5. Plaintiff counters that Lefebvre is not a scientific expert, but rather, his testimony will be based upon his skill, experience, training, or knowledge. For the reasons stated below, the Court denies the motion and generally admits the proffered testimony, while reserving its decision as to specific statements that Lefebvre may make while testifying at trial.

"[T]rial judges in Vermont 'must now act as gatekeepers who screen expert testimony ensuring that it is reliable and helpful to the issue at hand before the jury hears it.'" *985 Assocs., Ltd. v. Daewoo Elecs. Am., Inc.*, 2008 VT 14, ¶ 6, 183 Vt. 208

1

(quoting *USGen,* 2004 VT 90, ¶ 19, 177 Vt. 193).  The relevant rule provides that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise ...." V.R.E. 702.

The Vermont Supreme Court has recently noted that

> Such expert testimony is permissible so long as "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." V.R.E 702. Rule 702 is "essentially identical" to its federal counterpart, and we therefore "apply the federal principles governing admissibility of expert testimony." *985 Assocs. v. Daewoo Elecs. Am., Inc.*, 2008 VT 14, ¶ 6 (quotation omitted).
>
> ¶ 28. Rule 702 embodies "a trilogy of United State Supreme Court cases, beginning with [*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)], that expound the limits of admissibility for expert testimony and create workable standards for use by trial judges" to assess an expert's qualifications and the reliability of the methods used to reach their opinions. *State v. Pratt*, 2015 VT 89, ¶ 16. *Daubert* and its progeny provide "a flexible standard intended to keep misleading 'junk science' propagated primarily for litigation purposes out of the courtroom while simultaneously opening the door to well-reasoned but novel scientific or technical evidence." *985 Assocs.*, 2008 VT 14, ¶ 8.
>
> ¶ 29. The reliability of an expert's opinion depends on whether it is "sufficiently rooted in scientific knowledge." *Pratt*, 2015 VT 89, ¶ 17. To make that reliability assessment, a trial court may look to the four *Daubert* factors: (1) whether the applicable theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) its known or potential error rate; and (4) whether it has been generally accepted by the scientific community. *State v. Streich*, 163 Vt. 331, 343 (1995) (citing *Daubert*, 509 U.S. at 591-94). "These factors are not exhaustive, and a trial court has broad discretion to determine, on a case-by-case basis, whether some or any of the factors are relevant in evaluating the reliability of expert evidence before it." *State v. Scott*, 2013 VT 103, ¶ 10 (quotation omitted). This approach reflects the effort "to promote more liberal admission of

expert evidence" while keeping intact the trial court's gatekeeping role of excluding junk science. *Pratt*, 2015 VT 89, ¶ 17 (quotation omitted).

*State v. Rheaume*, 2024 VT 53, ¶¶ 27-29. However, "court should not admit testimony that is directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001). In other words, expert testimony must be limited to testimony "where the subject matter of the testimony is beyond the ken of the average juror." *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991). See also *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35; (1962) *United States v. Zhong*, 26 F.4th 536, 555 (2d Cir. 2022); *Sitts v. Dairy Farmers of Am., Inc.*, 2020 WL 3467993, at *11 (D. Vt. June 24, 2020) ("Expert testimony is not helpful if it simply addresses lay matters which a jury is capable of understanding and deciding without the expert's help"); *Doe v. Hartford Sch. Dist.*, 2018 WL 1064572, at *5 (D. Vt. Feb. 26, 2018) ("statements directed to matters which a jury is capable of understanding without an expert witness's assistance" are not expert opinion and must be excluded).

The Vermont Supreme Court has followed the United States Supreme Court's holding that "there are many different kinds of experts, and many different kinds of expertise," and "in some cases 'the relevant reliability concerns may focus upon personal knowledge or experience.' " *State v. Pratt*, 2015 VT 89, ¶ 18, 200 Vt. 64 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). The Vermont Supreme Court noted that

> a trial court has broad discretion to determine, on a case-by-case basis, whether some or any of the factors are relevant in evaluating the reliability of expert evidence before it." *Scott,* 2013 VT 103, ¶ 10, 88 A.3d 1173 (quotation omitted). We further explained in *State v. Kinney,* 171 Vt. 239, 762 A.2d 833 (2000), that a mechanical application of the *Daubert* factors to expert testimony is not necessary where the scientific or technical evidence is not novel and its reliability otherwise can be established. *Id.* at 249–50, 762 A.2d at 842. Notably, we concluded that the State was not obligated to present independent evidence, nor was the trial court required to make independent findings, on each of the *Daubert* factors because the reliability of the expert testimony could be established through other means, *particularly through analogy to comparable technical evidence we have allowed trial courts the discretion to admit and through evaluation of the same type of evidence by other courts. Id.* at 250, 762 A.2d at 842.

*State v. Pratt*, 2015 VT 89, ¶ 19 (emphasis supplied).

It is not unusual for trial courts to admit the testimony of "skilled" or "practical" expert witnesses where the witnesses have extensive experience in a particular area and apply that experience to make conclusions about what happened in a particular case. Similarly to the matters at stake in this case, in *Bloom v. ProMaxima Mfg. Co.*, the trial court admitted the testimony of the owner of a company that made exercise equipment, where the witness claimed experience with exercise equipment and had examined and made conclusions about the defects of the exercise chair at issue. 669 F. Supp. 2d 321, 328 (W.D.N.Y. 2009).

In *McCullock v. H.B. Fuller Co.*, the Court of Appeals for the Second Circuit held that it was proper to admit testimony from a consulting engineer regarding whether a person was in the breathing zone of hot glue fumes even though he had no formal education regarding fume dispersal patterns and no experience performing or interpreting air quality studies, did not know the chemical constituents of hot-melt glue or of any fume emitted by the glue, and did not know the concentration level of the fumes. 61 F.3d 1038, 1042–43 (2d Cir. 1995). The Second Circuit noted that the witness's background and practical experience qualified as "specialized knowledge" gained through experience, and that the opponent's "quibble" with the witness's alleged shortcomings could be properly explored on cross-examination and went to the weight of the evidence rather than its admissibility. *Id.* at 1043.

In *Wisdom v. TJX Companies, Inc.*, the trial court admitted testimony from a safety expert regarding a store's deviation from industry safety practices, where he had no experience in clothing rack design or with the clothing rack at issue in the case, yet had significant, practical experience in the "retailing world," including exposure to numerous types of store layouts and displays. 410 F. Supp. 2d 336, 342 (D. Vt. 2006). Notably, the court excluded the witness's testimony about the defectiveness of the specific rack at issue, where the witness did not have sufficient data ("over 100 similar racks") from which to draw reliable conclusions, but left open the possibility that discovery would acquire sufficient data to admit the testimony on that topic. *Id.* at 343.

Lefebvre's testimony is not proffered as scientific testimony, but rather, as specialized knowledge gained from Lefebvre's experience working with indoor golf simulators. His experience includes ownership in 2 indoor golf bar/restaurants founded around 2006 as well as a custom golf simulation company founded in 2012. Exh. 1 at 3. The company, which eventually became Indoor Golf Design (IGD) was according to Lefebvre the first custom design/manufacture/supply/setup golf simulation company in the industry. *Id.* Lefebvre has a separate research and development company, GolfTech USA ("GTUSA"), which holds a patent on a DIY screen product. *Id.* GTUSA also partners with other companies to test and do R&D work on their golf simulation and launch monitor products. *Id.* Lefebvre has received training from various manufacturers and companies on their screen systems and simulation equipment. *Id.* He learned best practices and tested various systems from most of the larger companies, and he worked with and designed systems for the major golf simulation companies. *Id.* He consults with several companies on new equipment, software, and screen designs. *Id.*

4

In forming his opinions relevant to this case, Lefebvre reviewed several depositions and exhibits, conducted a site visit, and reviewed answers to interrogatories. *Id*. at 4. His expert report describes the "anatomy" of a golf simulator room and includes a description of the typical characteristics of such simulators, such as the usual distance between the screens and walls. *Id*. at 4–5. He describes his observations from the site visit. *Id*. at 6–8. He offers his professional opinions about the ways in which the simulator in this case was hazardous and not installed correctly. *Id*. at 8–10.

Lefebvre's specialized knowledge derives from his experience, and in order to testify as to the opinions he proffers it is not necessary for him to have a specific degree or to base his conclusions on peer-reviewed scientific articles. His testimony will help a trier-of-fact understand how golf simulator rooms are constructed to reduce the hazards and how the specific materials, design, construction, and condition of the golf simulator in this case may have contributed to the incident in question. Therefore, Lefebvre's testimony is generally relevant. The Court reserves consideration of the relevance of specific testimony until trial.

Puretz criticizes Lefebvre's non-scientific approach and lack of scientific measuring instruments, but Lefebvre's opinions could reliably flow from the facts known to him from his experience with indoor golf simulators, golf equipment, the depositions regarding what happened in this case, and his manner of inspecting the golf simulator in question. *See Est. of George v. Vermont League of Cities & Towns*, 2010 VT 1, ¶ 15, 187 Vt. 229 ("Thus, in fulfilling its gatekeeper role, the trial court must 'examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used.' ") (quoting *Magistrini v. One Hour Martinizing Dry Cleaning,* 180 F.Supp.2d 584, 595 (D.N.J.2002)). Despite using "no scientific instruments at all to measure the tension on the fabric," Motion to Exclude at 6, Lefebvre's conclusions are generally reliable based on his professional experience, and there is no showing that such instrumentation or precision measurements would be necessary in order to render Lefebvre's opinions. Lefebvre has extensive experience evaluating golf simulation room designs, and there is no showing that scientific measurements would be necessary to reach the conclusions that Lefebvre proffers in his report.

Plaintiff's theory of causation is based on circumstantial evidence, and Lefebvre's conclusions are applications of his experience and knowledge to the known facts, such as the deviations from industry standards, the thickness of the screen, the condition of the tee and clubs, to make conclusions about cause—it is not blind speculation. There are certain questions of fact that are open, depending on the weight that the jury gives to other witnesses' testimony and other evidence. Lefebvre's conclusions take into account multiple factors that could have contributed to the incident that occurred, given the accounts of the incident in the depositions. The conclusions are reliable and relevant, and will assist the jury in deciding what happened and why it happened.

"Expert testimony 'does not alone have to meet the proponent's burden of proof' to be admissible." *In re Appeal of JAM Golf, LLC*, 2008 VT 110, ¶ 9, 185 Vt. 201 (quoting *USGen New England v. Town of Rockingham,* 2004 VT 90, ¶ 19, 177 Vt. 193).

"In order to tease out deficiencies of expert testimony, opponents should attack testimony of this nature through the adversarial process." *In re Appeal of JAM Golf, LLC*, 2008 VT 110, ¶ 9 (quoting *Daewoo,* 2008 VT 14, ¶ 16, 183 Vt. 208). Puretz's objections regarding scientific background and measurement go to the weight of the evidence, rather than its admissibility.

<u>Order</u>

Defendant Puretz's Motion to Exclude is denied for the reasons discussed above, with reservations as noted.

Electronically signed: 2/9/2026 1:15:24 PM pursuant to V.R.E.F. 9(d)

_____
John R. Treadwell
Superior Court Judge